In the Matter of the Judicial Settlement of the Account of JOHN S. WOODWARD et al., Executors, etc.

The will of H., after various legacies to certain of his nephews and nieces. and to three persons who were described as children of a deceased niece, gave his residuary estate unto his "nephews and nieces" therein before named, excepting certain ones named, "in such proportionate shares as. the legacies hereinbefore given and bequeathed to them respectively shall bear to each other." *Held*, that the three children of the deceased niece were not included in the residuary clause, and so were not entitled to a share of the residuary estate.

(Argued December 13, 1889; decided December 17, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 2, 1888, which affirmed a decree of the surrogate of the county of New York, rendered upon the judicial settlement of the account of the executors of Noah S. Hunt, deceased.

The material facts are sufficiently stated in the opinion.

*Charles H. Johnson* for appellant. The intention of the testator, as manifested by the entire will, should govern. (*Hoppock* v. *Tucker*, 59 N. Y. 209 ; *Shelby* v. *Byer*, Jacob's. Rep. 207 ; *Silcox* v. *Bell*, 1 S. & S. 301 ; *Mayott* v. *Mayott*, 2 Bro. Ch. 125 ; 2 Jarman on Wills [Am. ed.] 698 ; *Weeds* v. *Bristow*, L. R., 2 Eq. 333 ; *Pond* v. *Bergh*, 10 Paige, 152 ; *Sheety's Appeal*, 82 Penn. St. 213 ; *Anshutz* v. *Miller*, 81 id. 212 ; *Dimond* v. *Dimond*, 9 Phil. 215 ; *Sibert* v. *Wise*, 70 Penn. St. 147 ; *Middlesworth* v. *Blackmore*, 74 id. 414 ; *Crosby* v. *Wendell*, 6 Paige Ch. 548 ; *Doughty* v. *Cutler*, 23.

Wend. 513; *Cutler* v. *Doughty*, 7 Hill, 305; *Irving* v. *DeKay*, 9 Paige, 528; *Parks* v. *Parks*, Id. 117; *Cromer* v. *Pinckney*, 3 Barb. Ch. 466; *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; 9 N. Y. Leg. Obs. 197.) The fact that the death of his niece was present to his mind, and her three children formed a class to take her share, is substantiated by authority. (*Ferrer* v. *Pym*, 81 N. Y. 282; 18 Hun, 411; 1 id. 556; *In re Verplanck*, 91 N. Y. 444; *Raymond* v. *Millhouse*, 19 Abb. Law J. 523; *Newter's Appeal*, 40 Penn. St. 111; *Lockhart* v. *Lockhart*, 3 Jones' Eq. 205.)

*Charles H. Knox* for respondent. A legacy to a " class " is limited to those answering the particular description. (Schouler on Wills, § 536; 2 Jarman on Wills, 152; *Crook* v. *Whitely*, 7 DeG., M. & G. 490; *Falkner* v. *Butler*, Amb. Rep. 513, 514; *Shelly* v. *Bryer*, Jacobs' Rep. 207; *Lewis* v. *Fisher*, 2 Yeates, 196.) The testator bequeaths his residuary estate unto "my nephews and nieces hereinbefore named." This does not include the Grays. (*Adney* v. *Greatrex*, 17 Week. Rep. 634; *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214; *Cromer* v. *Pinckney*, 3 Barb. Ch. 466; *In re Blower*, L. R., 11 Eq. 97; *James* v. *Smith*, 14 Sim. 214; *Lewis* v. *Fisher*, 2 Yeates, 196; *Low* v. *Harmony*, 72 N. Y. 408; *Magaw* v. *Field*, 48 id. 668; *Hone* v. *Van Schaick*, 3 id. 538; Schouler on Wills, § 533; *Green's Appeal*, 42 Penn. St. 25.)

DANFORTH, J. Noah S. Hunt, who died in the city of New York, November 12, 1886, by his will made in 1879, after providing for the necessities of some of his brothers and sisters during their lives, out of the income of specific sums, gave the principal of those sums to certain persons described by him as his nephews and nieces, naming the brother or sister from whom they descended, and in the tenth clause, said:

" I give and bequeath unto Alice, Thomas and Frederick, the three children of my deceased niece, Mary Jane Gray, late wife of the Rev. Thomas M. Gray, each the sum of two thousand dollars. Provided always, nevertheless, and it is my

will that if my sister Jane Noe shall survive me, then, and in such case, at least one-half part, and more if she shall need or require it, of the interest or income of the legacies hereinbefore given to her said grandchildren, Alice, Thomas and Frederick Gray, shall be paid by my executors, their survivors or survivor, to my said sister Jane, or be applied to her use during the residue of the term of her natural life, and that the residue, if any, of such interest or income of such legacies, respectively, be paid to the said children of my deceased niece, Mary Jane Gray, respectively, to whom the principal thereof is hereinbefore given. \* \* \* And in the event of the death of any of them, the said Alice, Thomas and Frederick Gray before my decease, leaving no issue her or him or them surviving, who shall be living at the time of my death, then and in any and every such case I do give and bequeath the legacy aforesaid of such decedent unto the survivors or survivor of them the said Alice, Thomas and Frederick, if more than one, in equal shares. But in case any such decedent shall leave surviving him or her any issue who shall be living at the time of my death, such issue of the deceased shall be entitled to take the legacy of the deceased parent of such issue, if more than one in equal shares."

The eleventh clause is not material here, and the twelfth clause is in these words:

"All the rest, residue and remainder of my estates and property of every name, nature and description, including the principal sums to be invested for the payment of interest or income thereof, unto my nephews James H. Cory and Samuel H. Clark, and my niece Sarah Jane Bradford, as they shall severally, by the death of either of them, fall into my said residuary estate, I do give and devise and bequeath unto my nephews and nieces hereinbefore named, except the said James H. Cory, Samuel H. Clark and Sarah Jane Bradford, in such proportionate shares as the legacies hereinbefore given and bequeathed to them respectively shall bear to each other."

He appointed executors, who entered upon the duties of their office, and, in due time, applied to the Surrogate's Court

of the county of New York for a judicial settlement of their account. It was found that, after complying with the earlier provisions of the will, a surplus remained for distribution under the twelfth or residuary clause, and, as to that, the surrogate determined that "Frederick F. Gray, Thomas M. Gray and Alice Gray, the children of testator's deceased niece, Mary Jane Gray, are not nephews and niece of the testator within the meaning and intent of the testator as expressed in the twelfth clause of his will, and are not entitled to participate in the distribution of his residuary estate thereunder."

From that determination the three persons named appealed to the Supreme Court, where the judgment or determination was affirmed. We are of opinion, both upon principle and authority, that, in so doing, no error was committed.

There is no doubt that the intention of the testator, as manifested by the entire will, should govern. This is the appellant's contention, and it is a sound canon of construction. In a will, as in a statute, the spirit is to prevail, and the letter is not to be adhered to if a different signification can be gathered from the whole context of the instrument. But where the language of the testator is clear, intelligible and unambiguous, there is no room for its application. That is the case here. From a variety of beneficiaries the testator selects a certain class described by him as "nephews and nieces," and not all of that class, but only those "before named," and giving to those words the natural and ordinary signification, they include only the children mentioned in the preceding clauses of the will, and described as nephews and nieces. The record shows that he left a brother, Isaac G. Hunt, who had several children, all of whom were, of course, "nephews and nieces" of the testator, yet one only of them seems named in the will, and it might, I think, with equal plausibility, be said that those not named should be included, as that persons, although relatives, but not answering the description adopted by the testator, should be held to be entitled. As to the appellants they are called by the testator, not "nephews" or "nieces," but "children" of "his deceased niece," and, in the same clause, are twice

referred to in that manner. A discrimination in language and
a choice of words of description which indicate no intention
to include the persons named with nephews and nieces, but the
contrary. It is obvious the testator had in his mind the dif-
ferent degrees of relationship of his various beneficiaries, and
the selection of different words to describe them cannot be
attributed to mistake or inadvertence. To hold otherwise
would not preserve his intent, but defeat it. The authorities
are also the same way.

In *Falkner* v. *Butler* (Ambl. 514) the testator empowered
his wife to appoint his estate to be paid to his sisters and their
children. The court held that "the power was confined to
nephews and nieces and could not be extended to great-
nephews and great-nieces."

In *Shelley* v. *Bryer* (Jac. 207; Condensed Eng. Ch. Rep. 97)
the residuum of the estate of the testator was to be divided
equally between his nephews and nieces who might be then
living. Some doubt was created by the codicil, but it was
held that the terms nephews and nieces were not ambiguous,
and unless extended by some peculiarities could not include
great-nephews or great-nieces; upon the will alone, there was
no ambiguity, and, notwithstanding the doubt raised by
the codicil, it was so decided in view of both instruments. To
the same effect is *Crook* v. *Whitley* (7 De G., McN. & G. 490).

In *Cromer* v. *Pinckney* (3 Barb. Ch. 466) the general rule
is repeated that the testator must be presumed to have used
words in their ordinary sense or meaning, and that the words
"nephews and nieces," in their primary sense, means the
immediate descendants of the brother or sister of the person
named, and do not include grand-nephews and grand-nieces
or more remote descendants. The principle of construction
applied by this court in *Low* v. *Harmony* (72 N. Y. 408)
leads to the same conclusion.

The testator in that case had, in one clause, made provi-
sion for the appellant, describing her as the daughter of his
late daughter, Sarah Ann, and in a later clause gave his
residuary estate to his "wife and living children." It was

held that this language manifested an intention not to include the representatives of a deceased child. These cases are applicable here.

It follows that, whether we take the plain language of the tenth and twelfth clauses or search for the intention of the testator in the context of the will, the result is the same. From neither source can it be implied that the testator intended the children "of his deceased niece" to share in the bounty bestowed upon the nephews and nieces theretofore named by him.

The judgment of the court below should be affirmed, with costs.

All concur.

Judgment affirmed.