### LEASK et al. v. RICHARDS et al.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

WILLS—CONSTRUCTION.

    Testator was 83 years old at the time of his death, which occurred January 30, 1904, he dying a widower without children or descendants. He had had four sisters, all of whom had died leaving children, and four brothers, one of whom survived him. Another had died unmarried, and two others had died leaving children. His will was executed November 16, 1903, with a codicil dated December 9, 1903; and after disposing of considerable sums of money to nephews and nieces and grandnephews and grandnieces, giving to some bequests outright and to others the income of sums left to his executors in trust, with different directions as to the final disposal of the principal, he provided that the residue of his estate should be given to his "nephews and nieces" to be divided among them in the proportion which the previous gifts made to them bore to each other. Held, that the words "nephews and nieces" contained in the residuary clause included grandnephews and grandnieces, and this, whether the previous bequests in the will to them had been absolute or in trust.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1067.]

    Ingraham and Houghton, JJ., dissenting in part.

Appeal from Special Term, New York County.

Action by George Leask and others, executors of the will of Hudson Hoagland, deceased, against George Richards, Jr., and others. From a judgment construing the will, defendants Richards and others appeal. Modified and affirmed.

Argued before McLAUGHLIN, INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Frank L. Holt, for appellants Clarence S. Hoagland and others.

George W. Schurman, for appellant Edwin R. Hurd.

T. S. Ormiston, for appellant Cornelia C. Rose.

Adrian T. Kiernan, for guardian ad litem of Fannie Swayne and others.

Edgar J. Nathan, for appellants Anna Strait and others.

George Clinton, for appellant W. H. Hoagland.

James Gillin, Jr., for appellants Ella D. Hoagland and others.

Thomas E. Boyd, for appellant Charles F. Hoagland.

J. Hampden Dougherty, for respondents George Leask and others.

George C. De Lacy, for respondent Thomas H. Hoagland.

Richard J. Kent, for respondent Charles E. Benjamin.

Hamilton & Beckett and Samuel W. Bower, for respondent F. H. Benjamin, Anna C. Tucker, and others.

Tracy C. Becker, guardian ad litem for infant respondent Marguerite G. Hoagland.

SCOTT, J. The controversy in this action concerns the thirtieth clause of the will of Hudson Hoagland, who died on January 30, 1904, leaving a will which had been executed on November 16, 1903, with a codicil bearing date December 9, 1903. By the earlier clauses of his will he had disposed of a very considerable sum of money which he had left in the main to nephews and nieces, and grandnephews and grandnieces, giving to some bequests outright, and as to others intrusting the sums to his executors with instructions to pay over the income to the principal beneficiaries for life, with differing directions as to the final disposal of the principal. The thirtieth clause, which we are now required to construe, reads as follows:

"All the rest, residue and remainder of my estate and property, that is to say, all not hereinbefore disposed of, I give, devise and bequeath to my nephews and nieces to be divided between them in the proportions which the respective gifts made to them herein bear to each other."

All the property disposed of by the will, as well as that comprising the residuary estate, is personal property. The first question which arises is whether or not this thirtieth clause is operative at all, or whether, on the other hand, the testator died intestate as to his residuary estate. Although this is the first question to suggest itself, its answer can be found only after the other questions presented have themselves been answered, for there is no ground for pronouncing the clause invalid, unless, owing to the peculiarities of the will, it should be found impossible to carry out the testator's intentions respecting the distribution of his residuary estate. It is our duty to so construe the clause, if possible, as to avoid intestacy, and at the same time carry out the declared will of the testator; and, as will be seen, we are of opinion that both of these ends can be accomplished. It is quite evident that the testator did not intend to die intestate as to any portion of his estate, and the difficulty of carrying out the directions contained in the clause in question arises only from the manner in which he had in the earlier clauses of his will made bequests to his different beneficiaries. The language of the thirtieth clause, standing by itself and without references to the other parts of the will, is clear and unambiguous. The testator gives, devises, and bequeaths his residuary estate to certain nephews and nieces. The words import an absolute gift. There is no suggestion of any attempt or desire to create trusts or life interests, but to whomsoever may be found to be the nephews and nieces intended the residuary estate is given outright. To construe this language as creating trusts or life interests would be to strain the language of the will, to violate well-established canons of construction, and, as to a part of the residuary estate, would be to create an un-

lawful postponement of absolute ownership. We therefore conclude that whoever may be entitled to share in the residuary estate will take their shares absolutely.

The question as to who are entitled to share is one which has been much discussed, and requires an examination of the whole will and of the history and circumstances of testator's family. The will is not a model of draughtsmanship, and at first reading would appear to have been drawn without any very definite plan of distribution. Each clause containing a bequest is clear and definite in itself, but, when read together, there is a suggestion of incoherence so far as regards any general plan, either as to the parties to be benefited or as to the benefits to be conferred. Much of this apparent incoherence, however, disappears when the will is carefully studied in the light of the testimony as to the testator's family and relations. The testator was 83 years old at the time of his death, and had, during the last seven years of his life, made a number of wills. In the case of the will under examination, he had had the provisions of a former will recopied, except as to a few of the clauses, in which he had made changes, mainly as to the amounts involved; and it is not unreasonable to suppose that the apparent inconsistencies in the final will may have been due to the adoption from time to time of this method of ingrafting changes upon a will which doubtless in the first instance had been properly and consistently drawn.

The testator was a widower and left no children or descendants. He had had four sisters, all of whom had married and had died leaving children. He had had four brothers, one of whom survived him, and another of whom had died young and unmarried. The other two had married, and had died leaving children. Many of the testator's nephews and nieces had married and had children, and some had died leaving children. He had had in all 28 nephews and nieces, of whom 16 survived him and 12 died before he did. In one form or another, he remembered 15 of these surviving nephews and nieces. The sixteenth had gone West many years ago, and it is not certain that the testator knew of his existence. In the sixth clause of his will he gives an absolute legacy to the son of Mary Hurd, who was his eldest sister. In the seventh clause he gives a sum of money to his executors in trust for Emma McCarthy, who was the daughter of his deceased sister Sally Ann McCarthy. In the eighth and ninth clauses he makes provision for Cornelia F. Rose and Mary Benjamin, the children of his deceased sister Phœbe Hurd. In the tenth clause he gives legacies outright to a grandniece and grandnephew, the children of a deceased son of his deceased sister Eliza Belknap, and explains that for special reasons he has made no provision for another grandnephew. In the eleventh clause he also makes provision for a grandnephew, the son of a deceased daughter of his sister Eliza. In the twelfth clause he provides for a son of his deceased brother William Hoagland. In the thirteenth clause he provides for a grandnephew, the son of a deceased son of William Hoagland. And in the fourteenth clause he provides for two nieces, daughters of said brother William Hoagland. In the fifteenth, sixteenth, and seventeenth clauses he provides severally for

the children of his deceased brother John E. Hoagland. Up to this point the testator had provided severally and separately for each nephew and niece (save one) who were children of a deceased brother or sister, and where a nephew or niece had died, he had made provision for his or her children. The sole exception was his nephew Edward B. Hurd, the nephew who, as has been said, had gone West many years before the will was made; and in a later clause of the will, as if by an afterthought, he gave a legacy to the daughter of that nephew. He had one surviving brother, Mahlon, a very old man, who had a son, grandchildren the issue of a deceased son, and three daughters. He gave a considerable sum to his executors to hold during his brother's life, paying the income to him, and at his death gave a portion of the principal to Mahlon's son and the testator's namesake, absolutely; gave another portion to the widow of his deceased nephew, son of Mahlon, for her life, with the residue to her children; and with the remainder he provided for his nieces, the three daughters of his brother Mahlon.

From this analysis of the will it is not difficult to see that the testator had in mind a general scheme to distribute his estate among his relatives according to families, taking as the basis of distribution the families of his nephews and nieces, a not unnatural basis, in view of the fact that all of his brothers and sisters, save one, had predeceased him, and that all or nearly all of his nephews and nieces had themselves become the heads of families. That the distribution of his wealth among his relatives according to families was a predominant idea in the testator's mind is further evidenced by the seventeenth clause of the will, wherein he explains the comparative smallness of the legacies to the children of his brother John E. Hoagland, by stating that that brother had received considerable sums of money from him, and he then says: "I have arranged these bequests with a view to approximately equalizing the distribution to my family as far as possible." In consequence perhaps of the frequent changes which the testator made in his will, the approximate equality of bequests is not now apparent, but the obvious intention and effort to distribute the estate according to families remains. It is also apparent that the testator's solicitude to provide for the children of his immediate nephews and nieces extended to and embraced their children. Of the nephews and nieces who died before him leaving no issue he makes no mention in his will. Of the seven who died leaving issue, he has provided for the issue of five. In the case of Mary Benjamin, a niece to whom he had given a fund for life with residue to her children, and of whose death before him he was aware, he made no change in the distribution of the fund in consequence of her death. In every instance, except that of Thomas H. Hoagland, where provision is made for a nephew or niece who has children, the nephew or niece is given the income of the bequest for life, and the residue is bequeathed to the children, as is done also in the single instance where a gift is made to a grandnephew who has children. In several cases where the nephew or niece has no children, the legacy is given outright, and in case of Ella Haxton, who is given less than her sisters, the testator says: "I take into consideration the fact that the legatee has no children." In other cases, where the beneficiaries are

women and childless, and unlikely to bear children, the testator has given them the income of funds for life, with reversion to his residuary estate, and he has provided the same reversion in the cases of his nephews Thomas C., Charles F., and Harry Hoagland, if, and only if, they shall die childless.

To summarize the general scheme of the will, we find that the testator dealt with the families of his brothers and sisters practically in the order of their ages; that he provided for every living nephew or niece, except one of whose existence he may not have known; that, save in two instances, he made provision in one way or another for the family of every deceased nephew or niece who had left children; that in every case, except that of his namesake Thomas H. Hoagland, where a living nephew or niece had children, he gave only a life interest to the nephew or niece, and left the residue to the children; that, when a nephew or niece had no children, he either gave a legacy outright or provided that the residue, after the death of the niece, should go to the residuary estate; that in no single case, except that of Thomas H. Hoagland, where a nephew or niece has children or the probability of children, has the testator failed to so provide that his bequest shall ultimately go to the children of such nephew or niece. It is clear, therefore, that the testator's general scheme was to divide and transmit his property through the nephews and nieces, taking care that the families of those who died or had died before him should take the share of the ancestor.

In determining who are to be included as beneficiaries under the thirtieth clause of the will under the designation of "nephews and nieces" to whom gifts were made by the earlier clauses of the will, we must give such a meaning to these words as will effectuate the purpose of the testator. Roe v. Vingut, 117 N. Y. 212, 22 N. E. 933. Ordinarily the words "nephew and niece," when used in a will, will be taken in their primary sense as indicating the children of a brother or sister (Matter of Woodward, 117 N. Y. 522, 23 N. E. 120, 7 L. R. A. 367), but the meaning of these words will be, and often has been, so expanded as to embrace grandnephews and grandnieces, when the context and the evident intention of the testator calls for such expansion (2 Jarman on Wills, p. 1006; Cromer v. Pinckney, 3 Barb. Ch. 466; Brower v. Bowers, 1 Abb. Dec. 214. It is apparent that all of the words of the thirtieth clause are not to be taken in their strict meaning. Thus the residuary estate is to be divided in proportion to the "gifts" bequeathed to the nephews and nieces, while strictly speaking, save in a very few instances, nothing has been given to any nephew or niece, but funds have been "given" to the executors for their benefit. It cannot be, however, that the testator intended that his residuary estate should go only to those nephews and nieces to whom he had given sums outright, and hence the word "gifts" must be so expanded as to include gifts given to the executors for the benefit of nephews and nieces, and must be treated, for the purpose of distributing the residuum, as gifts to the nephews and nieces.

Taking the will as a whole, then, and striving to give effect to the expressed intention of the testator, we are of opinion that it was his purpose to distribute his residuary estate according to the general scheme contained in the will, and to effectuate this purpose these grand-

nephews and grandnieces, children of deceased nephews and nieces, to whom gifts were made by the earlier clauses of the will, must be deemed to be included within the phrase "nephews and nieces" as used in the residuary clause.   Thus Frederick Swayne, for whom a legacy is given to executors, and who has children, is the only child and the sole representative of the deceased niece Josephine Swayne.   Clarence Speekman Hoagland, another grandnephew to whom a gift is made, is the only descendant of the deceased nephew Speekman Hoagland.   It is entirely in accord with the general scheme of the will that these grand-nephews should be permitted to share in the residuary estate.   So, also, as to the children of Mahlon Hoagland, Jr., a deceased nephew. The provision made for this nephew's family was in the form of a bequest in trust for the benefit of the nephew's widow during her life, with the residue to the children.   Here again we discern evidence of an intention to divide the estate according to the families of the nephews and nieces, insuring so far as possible that their descendants should share in the enjoyment of the provision made for the family. The widow of Mahlon Hoagland, Jr., is, of course, not included among the nieces; but we think that, in order to preserve the scheme of distribution embodied in the will, the children of Mahlon Hoagland, Jr., should be classed among the nephews and nieces mentioned in the thirtieth clause.   We are unable, therefore, to concur in the view expressed below that the words "nephews and nieces" must be taken only in their primary sense.   It seems to us to be unreasonable to hold, in view of the great care with which the testator provided for those of . his grandnephews and grandnieces whose ancestors bearing to him the relation of nephew or niece had died, that he intended to exclude them from any share in his residuary estate, which evidently was intended to follow the bequests to his family contained in the earlier clauses of the will.

We have arrived, then, at these conclusions: That the testator intended to give absolutely his residuary estate to the designated beneficiaries; that he intended to include among these beneficiaries, not only his living nephews and nieces to whom he had made bequests, but those descendants of deceased nephews and nieces to whom he had made bequests, including the children of Mahlon Hoagland, Jr.; and that, when he spoke of gifts which had been made to such nephews and nieces, he referred, not only to sums given outright, but also to such sums as were given to his executors in trust for the benefit of such nephews or nieces during their respective lives.   In so concluding, we cannot doubt that we are following the intention of the testator, for the result will be that the residuary estate will go to those members of his family for whom he made specific provision in the earlier clauses of his will, and in the same proportions as those in which he distributed his specific bequests.   It is true that the quality of the estate that some of the distributees will take in the residuum will differ from that which they take under the specific bequest; but this is precisely what the thirtieth clause seems to provide for.   Under this construction, the distribution of the residuary estate will not be difficult. To ascertain the proportion to which each legatee will be entitled, the sum given to the executors to be held during the lifetime of a nephew

or niece or grandnephew or grandniece will be taken as the basis of computation, as if said sum had been given to the beneficiary outright, as will also the sum the residue of which, after the life interest of their mother, is given to the children of the nephew Mahlon Hoagland, Jr. Those to whom the residues of such sums are given after the death of the first beneficiary will not be entitled to share in the residuary estate, except the children of Mary Benjamin, who died before the testator, and the children of Mahlon Hoagland, Jr., who are the only representatives of testator's blood of the family of said Mahlon, Jr. This method of distribution not only carries out as to the whole estate, the general scheme of distribution contained in the will, but follows the same lines which were followed by the Court of Appeals in giving a practicable construction to a somewhat similar will. Weeks v. Cornwell, 104 N. Y. 325, 10 N. E. 431.

The judgment appealed from will be modified in accordance with the views expressed in this opinion, and as modified will be affirmed, with costs payable out of the estate to all parties who have appeared and filed briefs.

McLAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, J. I concur with Mr. Justice SCOTT, except in one particular. It is settled, I think, that the primary significance of the words "nephew and niece" is the children of brothers and sisters. In the Matter of Woodworth, 117 N. Y. 522, 23 N. E. 120, 7 L. R. A. 367, it was expressly held that a legacy to nephews and nieces did not include the descendants of nephews and nieces. The court there said:

"From a variety of beneficiaries the testator selects a certain class described by him as 'nephews and nieces,' and not all of that class, but only those 'before named,' and, giving to those words the natural and ordinary significance, they include only the children mentioned in the preceding clause of the will, and described as nephews and nieces. * * * As to the appellants (grand nephews and nieces) they are called by the testator, not 'nephews' or 'nieces,' but 'children' of his 'deceased niece,' and, in the same clause, are twice referred to in that manner—a discrimination in language and a choice of words of description which indicates no intention to include the persons named with nephews and nieces, but the contrary."

An examination of this will would seem to bring it within the principle here established.

By the tenth clause of the will the testator gives a legacy to grand-nieces, describing them as the two children of "my deceased nephew Elijah Belknap." By the eleventh clause he makes provision for the support and maintenance of Fred Swayne, who was the son of a niece. By the twelfth clause he provides for the support of his nephew William Hoagland, the son of his deceased brother William. By the thirteenth clause he provides for the support and maintenance of Speekman Hoagland, the son of his deceased nephew. By the sixteenth clause he gives a legacy to the benefit of his nephew Whitfield H. Hoagland. By the eighteenth clause he makes provision for a brother, with the remainder over for the children of the brother. By the twenty-seventh clause he makes a bequest to his nephew Thomas H. Hoagland. Thus, it seems that the testator draws a clear distinction between nephews and

nieces and the descendants of nephews and nieces, and this, I think, brings the case clearly within the Matter of Woodworth. I think, therefore, this legacy contained in the thirtieth clause of the will must be confined to the nephews and nieces to the exclusion of the defendant nephews and nieces named by him.

In all other respects I concur with Mr. Justice SCOTT.

HOUGHTON, J., concurs.