LEASK et al. v. McCARTY.

(Supreme Court, Appellate Division, First Department.  December 1, 1911.)

1. WILLS (§ 758*)—DISTRIBUTION OF ESTATE—ADVANCEMENTS.

Where a testator holding notes of defendant for sums which he had paid her provided a trust fund of $40,000, the income of which was to be paid to her during life, and gave her a share of his residuary estate which was greater than the amount due on the notes, the amount due, being a binding obligation of defendant, was properly deducted from the legacy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1957–1960; Dec. Dig. § 758.*]

2. COSTS (§ 164*) — ITEMS—EXTRA ALLOWANCE — "DIFFICULT AND EXTRAORDINARY CASE."

An action by executors to obtain the judgment of the Supreme Court whether they had the equitable right to set off a sum due the testator against the distributive share of a legatee was not a "difficult and extraordinary case" within Code Civ. Proc. § 3253, authorizing an extra allowance of costs in such cases.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, vol. 3, p. 2064; vol. 8, p. 7637.]

Clarke and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by George Leask and others, as executors of the will of Hudson Hoagland, against Mary Emma McCarty.  From a judgment for plaintiff on a decision by the court after trial, defendant appeals.  Affirmed.

See, also, 142 App. Div. 938, 127 N. Y. Supp. 1129.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

James Gillin, for appellant.
J. Hampden Dougherty, for respondents.

INGRAHAM, P. J.  When the testator died he had in his possession five promissory notes of $1,000 each, signed by the defendant and payable to the order of the testator, which, with interest, amounted to $6,962.50.  The defendant admits the making of the notes and receiving from the testator, up or prior to the time that they were dated the sums specified.  In the testator's will there was a trust fund created of $40,000, the income of which was to be paid to the defendant for life, and she was given a share of his residuary estate of which, on a distribution by the executors of the sum of $650,000, the defendant was entitled to more than $25,000.  This sum the executors paid to the defendant by delivering to her the five notes and the balance in cash which the defendant received, and for which she gave a receipt for the full amount of her share of this distribution of the testator's estate.

[1] The sole question presented in this case is whether the executors are entitled to deduct from the defendant's distributive share of the

estate the amount of these notes. I agree with Mr. Justice CLARKE that the evidence would not justify us in reversing the decision of the court below that these notes were existing obligations at the time of the testator's death. In a case between these executors and a nephew of the testator, where the testator had advanced money to his nephew and had taken from him promissory notes, we upheld the claim of the executors that they were entitled to deduct from the share of a residuary legatee the amount due to the estate represented by promissory notes of the legatee held by the testator, and the court even went so far as to allow the executors to deduct from the amount due to the nephew subsequent payments made by the testator for which he took no notes, and as to which there was no evidence that he intended that the payments were made by way of loan, or that the testator ever intended or for which the testator ever expected would be paid. See Leask v. Hoagland, 136 App. Div. 658, 121 N. Y. Supp. 197, and s. c. 144 App. Div. 138, 128 N. Y. Supp. 1017. The testator advanced to the defendant the sum of $1,000 a year, taking therefor promissory notes whereby the defendant promised to repay the sums advanced to the testator. There was no question of advancement and no postponement of the obligation to repay until after the testator's death, nothing but an ordinary loan of money for which the borrower executed and delivered to a lender her promissory notes for the amount; and it seems to me that the question is whether upon these obligations there existed an indebtedness from the defendant to the testator, or, after his death, to his personal representative. If the testator had made no provision for the defendant in his will, and the executors had sought to enforce payment of these notes upon this evidence, it is clear that the plaintiffs would have been entitled to judgment. Instead of proceeding against the defendant and obtaining a judgment for the amount when the notes became due, the executors, when defendant became entitled to a payment under the will, claimed that they were entitled to deduct the amount of the notes from the amount due, and in that claim the defendant acquiesced and received and receipted for the amount of her share in the fund then distributed, less the amount of these notes.

It is now claimed that this could not be done upon the ground that where a testator has made an advancement to a relative, and subsequently makes a will leaving to that legatee a bequest, without mentioning the advancement, the amount of the advancement cannot be deducted from the legacy. Bowron v. Kent, 190 N. Y. 422, 83 N. E. 472. In that case the testator had advanced before her death to her niece the sum of $25,000 in consideration of her withdrawing from a will controversy to which both the testatrix and her niece were parties. That payment was made in pursuance of an agreement of settlement, and as a part of that agreement it was provided that in case, upon the decease of the testatrix, any share of her estate should pass to her niece or her issue, it should be treated as an advance upon account of such share, and reckoned accordingly. The testator paid the $25,000 and the issue of the niece received it after the testatrix's death, but the testator made a will giv-

ing a legacy to her niece without mentioning this agreement; nor was any intention in the will expressed that the $25,000 should be deducted from the provision made for the niece. The court, in determining the question as to whether the $25,000 should be deducted from the provision made for the niece in the will, applied the familiar doctrine that, if the donor disposed of his whole estate by will, the doctrine of advancements has no application, unless the will specifically refers to advancements and defines what previous gifts shall be so considered, and discusses the various cases upon that subject in this state; but this case and all the cases referred to related solely to cases of advancement where a person standing in loco parentis had transferred a sum of money or property in anticipation of the share of the donor's estate which the donee would receive in the event of the donor's dying intestate. The rule had never been applied so far as I know to a case of an actual loan of money by a testator to a person to whom he subsequently leaves a legacy, and where upon the making of the loan absolute obligation is taken from the borrower to repay to the testator the sum of money loaned. There is not in that case an advancement to which the rule in Bowron v. Kent, supra, applies. The rule to be applied in this case seems to me to depend upon the actual relations of the parties at the time the loan was made. If, at that time, there was no enforceable obligation for the repayment of the advances, except so far as such a repayment was to be made from a portion of the donor's estate after the donor's death, then there was an advancement which was covered by the rules relating to transactions of that character. If, however, the payment of the money was in fact a loan, and not an advancement by which the borrower became indebted to the loanor and which indebtedness the loanor could enforce when the loan became payable, then there was no advancement, but a simple indebtedness which survived the death of the lender, and for which his executors could enforce payment; and I think such is this case.

The testator paid to the plaintiff $1,000 a year, and he or his representative took from her for each payment a promissory note for the amount by which the defendant agreed to pay to the testator the amount paid to her. She signed these notes at the request of the testator's bookkeeper, who said he wished them as a memorandum; but a memorandum of what? Certainly of the terms upon which the payments had been made, and that memorandum was in the form of a promissory note, which obligated the defendant to pay to the testator the amount which she received from him. It may well be that in consequence of the pecuniary condition of the defendant the testator knew that she would not be able to pay the note if he demanded payment, but there was some motive in taking a note, rather than a receipt, and that was only consistent with the fact that the arrangement under which the payment was made was a loan of money for which the maker of the note would be liable. The parties have settled the terms of the agreement under which this money was paid, and, having thus settled the obligation assumed by the defendant on the receipt of the money, certainly the court has no power to change the form of the arrangement.

[2] I do not think this case was a difficult and extraordinary one within the meaning of section 3253 of the Code of Civil Procedure, and therefore the allowance was unjustifiable. There was a miscalculation as to the interest amounting to $634.17 which should be deducted.

The judgment should therefore be modified by deducting the interest above mentioned and the extra allowance, and as modified affirmed, without costs.

LAUGHLIN and MILLER, JJ., concur.

CLARKE, J. (dissenting). Hudson Hoagland died January 20, 1904, leaving a last will and testament executed November 16, 1903. The defendant was his niece. The plaintiffs are his executors. In his will he created a trust in the sum of $40,000, the income and profits to be paid to her for life, and, upon her death, to revert to and become part of the residuary estate. She is also one of his residuary legatees. On October 18, 1907, the executors distributed $650,000 of the residuary estate, of which $25,663.20 was defendant's proportionate share. The executors gave her a check for $18,770 and delivered to her five notes of $1,000 each, drawn by her to the order of Hudson Hoagland, which, with the interest thereon as claimed, amounted to $6,962.50. Subsequently the executors filed their accounts in the Surrogate's Court, and the defendant filed objections to the accounts in so far as they claimed a set-off of the $6,962.50 represented by said notes and interest against her proportionate share. Whereupon the executors brought this suit to obtain the judgment of the Supreme Court that they had the equitable right to offset said sum. The sufficiency of the complaint, which was tested by demurrer, was established. 59 Misc. Rep. 565, 112 N. Y. Supp. 405, affirmed 130 App. Div. 877, 114 N. Y. Supp. 1133.

On the 22d of February, 1899, the defendant was, and for 23 years prior thereto had been, continuously employed as a clerk or copyist in the office of the clerk of Morris county, N. J., receiving for her service from $65 to $75 a month; that is, from $780 to $900 a year. On the 23d of February she resigned, her resignation to take effect April 1st, and she left said clerk's office on that date. On April 3, 1899, she received by mail a check of Hudson Hoagland, payable to her order, for $1,000, inclosed in a letter of said date, in the handwriting of one Aitken, Mr. Hoagland's secretary, and signed, "Hudson Hoagland, per G. A. A." On April 3, 1900, she received by mail a check of Hudson Hoagland for $1,000 in a letter which reads as follows:

"April 2, 1900.

"Mrs. Emma McCarty. Madame: Inclosed find check $1,000. Also find two notes for $1,000, each dated April 3, 1899 & April 3, 1900, which please sign & return, as I wish to keep them as a memorandum. Also affix 20¢ in revenue stamps to each note.

"Yours truly,            Hudson Hoagland, per Geo. A. Aitken."

She executed said notes, and sent them to Mr. Hoagland by mail. On April 3, 1901, she received Mr. Hoagland's check for $1,000, and on May 11th received a letter dated May 10, 1901, saying:

"Inclosed find note for signature dated April 3, 1901, at 1 day for $1,000, which please sign & return to me as I wish to have it as a memorandum for the money advanced on that date.

"Yours truly,                    Hudson Hoagland, per Geo. A. Aitken."

On April 3, 1902, and on April 3, 1903, she received two further checks of $1,000, each inclosed in letters containing notes due one day after date, all of which notes she executed and sent to Mr. Hoagland. These five notes were found by the executors in testator's effects after his death, and are the notes for which an offset is claimed.

The appellant claims, first, that said notes were without consideration, and are unenforceable against her, for the reason that on the 22d of February, 1899, Mr. Hoagland made an agreement with her that, if she would resign her position in the clerk's office of Morris county, he would pay her $1,000 a year; that she did resign, and that he did pay her on the 3d of April of each year thereafter until the year of his death the $1,000; that she signed the notes as mere receipts or memoranda of the said payments; that, having made said agreement with her uncle, the decedent, and having acted upon it by resigning her position, the $1,000 which she received was due to her, and therefore the paper in the form of a note which she executed was without consideration.

This claim depends upon the fact of the agreement. There is no direct proof of such agreement. She could not, of course, testify as to any personal conversations with the decedent. Miss Rose, another niece of the decedent, testified that on February 23, 1899—

"Mr. Hoagland told me that he had arranged to have Miss McCarty leave the clerk's office while he was in Dover, and I asked him how that came about, and he said that Mr. Richards said to him, 'Before you build churches'—he was about building a church in Dover—'before you build churches, you had better take your niece from the clerk's office,' and he said, 'Well, I am willing to do it.' He said, 'I have done it.' I said, 'That is very nice.' And then he went on to speak of Miss McCarty's sister, Mrs. Richards, and he said, 'Well, Libbie will die happier for knowing I have taken her sister from the clerk's office.' In that conversation Hudson Hoagland stated what he had authorized George Richards to say to Mary Emma McCarty. He said that he asked Mr. Richards how much it would cost to have Miss McCarty leave her position, and he said, 'I don't know. She is upstairs with my wife. I will get her.' And he went upstairs and was gone a little while, and he came back, and said that Miss McCarty was willing to take $1,000 a year and give up her position. Hudson Hoagland further said, 'I have agreed to give her $1,000, and she is going to leave the office the 1st of April.' "

Appellant claims that upon that testimony, coupled with the fact that Miss McCarty did resign on February 23d, to take effect April 1st, and did then leave the office, and for five years thereafter upon the same date received Hudson Hoagland's check for $1,000, that she has established said agreement. She disposes of the notes and the letters accompanying them by the fact that they were all in the handwriting of Mr. Aitken, the secretary, and asks that the inference be drawn that it was solely his idea to obtain the notes as a memorandum of the payment, and that this was without the knowledge or directions of Mr. Hoagland, that it is not credible that Mr. Hoagland, who knew her precise financial condition, and who had caused her to resign her employment under the circumstances testified to, could ever

have intended to have her execute a note or ever have expected that she could or would repay the annual amount sent by him to her. The difficulty about this claim found by the court below and by us is that dependence must be placed upon oral testimony of a conversation had 11 years before the trial, and upon inferences drawn, to destroy documents executed at the time of the occurrences and carefully preserved by the decedent. To destroy her written documents which prima facie establish a claim against her in favor of the decedent's estate, she attempts to prove an ante mortem parol agreement with the decedent, whose lips are closed. As to such an agreement, the courts have recently and repeatedly laid down the rule that it must be established by clear and convincing testimony. We cannot say that the finding of the Special Term was against the evidence.

Appellant's next claim is that, if the decedent did knowingly require of her the said notes, his knowledge of her circumstances was such that he did not and could not have expected her to repay him the sums advanced, and, if he took the notes, they were kept as mere evidence of advancements, and, as they were not alluded to in his will, in which he left a trust fund of $40,000 for her benefit and in which he made her one of his residuary legatees, the amount of such advancements cannot be deducted. For this proposition she relies upon Bowron v. Kent, 190 N. Y. 422, 83 N. E. 472.

The will of Hudson Hoagland was before this court for construction in Leask v. Richards, 116 App. Div. 274, 101 N. Y. Supp. 652, affirmed 188 N. Y. 291, 80 N. E. 919. It is admitted that testator was a widower and left no children or descendants, and it appears that all the property disposed of by the will, including that comprising the residuary estate, is personal property. The statute of distributions at the time of the testator's death, being section 2732 of the Code of Civil Procedure, provided in paragraph 5 thereof that, in case the deceased died intestate:

"If there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives; and if all the brothers and sisters of the intestate be living, the whole surplus shall be distributed to them; if any of them be living and any be dead, to the brothers and sisters living, and the descendants in whatever degree of those dead; so that to each living brother or sister shall be distributed such share as would have been distributed to him or her if all the brothers and sisters of the intestate who shall have died leaving issue had been living, and so that there shall be distributed to such descendants in whatever degree, collectively, the share which their parent would have received if living."

In Bowron v. Kent, supra, Haight, J., quoted from Am. & Eng. Enc. of Law (2d Ed.) p. 760:

"Sec. 1. An advancement is defined to be 'a transfer of property from a person standing in loco parentis toward another, to that other, in anticipation of the share of the donor's estate which the donee would receive in the event of the donor's dying intestate.

"Sec. 2. If the donor disposes of his whole estate by will, the doctrine of advancements has no application, unless the will specifically refers to advancements and defines what previous gifts shall be so considered. Even if the

132 N.Y.S.—7

will expressly states that the property is to be distributed according to law as in intestacy, it is still a will, and the doctrine of advancements does not apply.'"

And he held that, as the will under consideration contained no provision with reference to the deduction of advancements, the subsequent making of the will under the circumstances disclosed indicated an intention on testatrix's part to cancel any obligation which might otherwise arise from the advancement.

The learned court below held that the doctrine of the Bowron Case did not apply as Hudson Hoagland was not in loco parentis to the defendant. But under the statute of distributions cited, supra, he, having left no widow, children, or descendants, and she being the daughter of a deceased sister, would have been entitled to share in his estate if he had died intestate. "The doctrine of advancements has been extended to cover transactions between uncle and nephew, aunt, and niece, and older and younger brothers." 1 Am. & Eng. Enc. 775. In the Bowron Case the relation was that of aunt and niece. The defendant comes within the doctrine of advancements laid down in that case.

That the testator was aware of said doctrine is apparent from the twentieth clause of the will in which he provided:

"I give and bequeath to my cousin Maria B. Dalrymple, of Dover, New Jersey, the sum of $10,000, any moneys which I have advanced or paid to said Maria Dalrymple in my lifetime to be regarded as payment on account of this legacy and to be charged against the same."

With this knowledge, and having made these five payments to the defendant and having taken her notes, if we assume that they came into his possession with knowledge, he thereafter, months subsequent to the last payment, executed his will in which he left her the trust fund of $40,000 and made her one of his residuary legatees without providing for the deduction which he had been so careful to make in the case of Mrs. Dalrymple. As some corroboration of this point of view, I may refer to the letter of May 10, 1901, in which the note of April 3d of that year was sent to her, in which, writing by Aitken, he said:

"Which please sign and return to me as I wish to have it as a memorandum for the money advanced on that date."

Taking all the circumstances together, eliminating from consideration any question of a contract or agreement with his niece, taking simply his knowledge of her circumstances, the fact of her resignation from her employment, the fact that at that time he began a yearly payment to her of $1,000, that he subsequently made for her the specified provisions in the will cited, with knowledge on his part of the doctrine of advancements as shown by the clause quoted, it seems to me that the case comes precisely under the Bowron Case, and that the defendant was entitled to receive the entire amount bequeathed to her by the testator without deduction. I think that was his purpose and intention clearly evidenced by his last will and testament.

The third claim is that the learned Special Term committed error when it found that the receipt executed by the defendant when she received the payment of $18,700.70 and the five notes was an accord

and satisfaction of her claim. We agree with that contention. The executors stood in a fiduciary capacity to her. They were not dealing at arm's length; and, while they were performing what they conceived to be their duty in the premises and were not guilty of fraud, deceit, or misrepresentation, we do not think that under the circumstances disclosed she is estopped by her act in receiving part of the money which was due her and by the execution of the receipt. Adams v. Cowan, 177 U. S. 471, 483, 20 Sup. Ct. 668, 44 L. Ed. 851.

It follows, therefore, that the judgment appealed from should be reversed, with costs and disbursements to the appellant.

SCOTT, J., concurs.