In the Matter of the Judicial Settlement of the Account of JESSIE S. VAN RIEMPST, as Executrix, etc., of ELIZABETH F. TERRY, Deceased.

WARREN MCARTHUR and Others, Appellants; JESSIE S. VAN RIEMPST, as Executrix, Respondent.

Third Department, May 2, 1917.

**Will — construction — when terms " nephews and nieces " do not include grandnephews and grandnieces — gift by implication.**

The terms " nephews and nieces " in their primary and ordinary sense do not include grandnephews and grandnieces or more remote descendants unless there is something in the will to show that the words were used in the broader sense.

Where a will by express terms in different clauses gives property to the " nephews and nieces " of the testatrix, and the language used is not of a doubtful or uncertain effect, the other parts of the will cannot be resorted to to determine the meaning of said words.

Provisions of a will examined, and *held*, that it was the intention of the testatrix to use the terms " nephews and nieces " in their primary and ordinary sense, and that said terms did not include the children of a deceased nephew.

In order to support a gift by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to present no other reasonable inference.

APPEAL by Warren McArthur and others from parts of a decree of the Surrogate's Court of the county of Columbia, entered in the office of said Surrogate's Court on the 9th day of February, 1917, construing the will herein.

The will was executed April 19, 1915. The testatrix died December 26, 1915, leaving as her only surviving next of kin one brother, eighteen nephews and nieces, children of deceased brothers and sisters and the respondents, and Sanford G. Hoysradt, Caroline H. Whitbeck and Gertrude McE. Whitbeck, children of Albert Hoysradt a deceased nephew. There were also fifteen or more grandnephews and grand-nieces, children of the nephews and nieces mentioned in the will.

By her will, after providing for the payment of her debts and funeral expenses, she gave, by the 3d clause therein, " to Sanford G. Hoysradt, Caroline Whitbeck and Gertrude

McE. Whitbeck, children of my deceased nephew, Albert Hoysradt, the sum of one hundred and sixty-six dollars each."

By the 4th clause she gave " to my niece Indianna McArthur, the sum of five hundred dollars." By the 5th clause she gave " to my great niece, Elizabeth Folger McArthur, daughter of George P. McArthur, the sum of two hundred dollars." By the 6th, 7th and 8th clauses she gave to seventeen nephews and nieces therein named, and to Sarah G. Bradley, a stranger in blood, " two hundred dollars each." By the 9th clause she gave to a Sunday school the sum of $200. In the 10th clause she bequeathed her wearing apparel and jewelry to her executrix in trust. By the 11th clause she created a trust fund of $2,000 for the benefit of her brother John A. McArthur, and provided therein that at his death the said $2,000 should be divided " among my nephews and nieces who shall then be living, share and share alike." By the 12th clause she created another trust fund of $3,000 for the benefit of her brother Robert McArthur, and provided therein that at his death the said $3,000 should be divided " among my nephews and nieces, who shall then be living, share and share alike."

The 13th clause is as follows: "All the rest and residue of my estate I give, devise and bequeath to my nephews and nieces to be divided between them in equal shares."

The court found that the testatrix intended that the children of her deceased nephew Albert Hoysradt, mentioned in the 3d clause of the will, should share *per capita* with the nephews and nieces in the residuary estate including the principal of the two trust funds, the brothers John A. McArthur and Robert McArthur having died before the proceeding for an accounting was commenced.

*Samuel B. Coffin*, for the appellants.

*John V. Whitbeck, Jr.*, for the respondent.

SEWELL, J.:

We think that the conclusion reached by the Surrogate's Court is not correct. Nothing is better settled in the law of wills than that the terms " nephews and nieces " in their primary and ordinary sense do not include grandnephews

and grandnieces or more remote descendants unless there is something in the will to show that the words were used in a broader sense. (*Pimel* v. *Betjemann,* 183 N. Y. 194; *Matter of Woodward,* 117 id. 522; *Low* v. *Harmony,* 72 id. 408.)

There are many authorities on wills in which the word " children " and the words " nephews and nieces " have been construed to mean " grandchildren," and " grandnephews and grandnieces," but in all of these cases it was either from necessity, where the will would otherwise remain inoperative or where the testator had clearly shown, by the use of other words, that he did not intend to give the words used their primary and ordinary meaning but used them in some other or secondary sense.

In this case, however, there is no necessity or room for a judicial construction of the 11th, 12th or 13th clauses of the will, which in express terms give the principal of the two trust funds and the residuary estate to the nephews and nieces of the testatrix. The language used by the testatrix in each of these provisions of her will is not of a doubtful or uncertain effect, and there is nothing in any of them that tends to show that she did not use the words " nephews and nieces " in their ordinary and primary sense. Under such circumstances the rule is that the other parts of the will cannot be resorted to to determine the meaning of these provisions. (*Eidt* v. *Eidt,* 203 N. Y. 325.)

Neither is there any ambiguity in any of the previous clauses of the will. Each is clear and definite in itself and describes the subject and the object of the gift with absolute certainty. In none of these clauses does the language employed indicate a disposition in the testatrix to give the respondents more than the amount specified in the 3d clause.

A study of the entire will does not disclose any conflict between the intention of the testatrix as expressed in one claim or provision and her intention as expressed in another. There is nothing in it that tends to show that the terms "nephews" and "nieces" were not used in their ordinary sense and meaning. The fact that each of the respondents was given only thirty-four dollars less than the bequest to each of the nephews and nieces, except one, is entitled to no more consideration in construing the will than the fact that the

same amount was given to the Sunday school and to Sarah G. Bradley as was given to each of the nephews and nieces. By the same rule a gift to these legatees would be taken as an intention to include them in the distribution of the residuary estate as well as the respondents. A clear and unmistakable intention of the testatrix not to include her grandnephews and nieces, as beneficiaries under the 11th, 12th or 13th clauses of the will, is apparent from the fact that in the 13th clause she drew a clear distinction between her nephews and nieces and the descendants of nephews and nieces. We think this brings the case within *Matter of Woodward*, where it was expressly held that a legacy to nephews and nieces did not include the descendants of nephews and nieces. In that case some of the legatees were described as " nephews and nieces," and others as " children of my deceased niece," and the court said that the discrimination in the language and the choice of words of description " indicate no intention to include the persons named with nephews and nieces, but the contrary. It is obvious the testator had in his mind the different degrees of relationship of his various beneficiaries, and the selection of different words to describe them cannot be attributed to mistake or inadvertence. To hold otherwise would not preserve his intent, but defeat it. The authorities are also the same way."

The language of the 11th and 12th clauses also manifests an intention not to include the descendants of a nephew or niece. If she had intended to give them an equal share in the $5,000, upon the death of her brothers, she certainly would have used some words indicative of such an intention and not have restricted the division of it to " my nephews and nieces who shall then be living."

The construction contended for by the respondents is based entirely upon the assumption that the court has power to read into the 11th, 12th and 13th clauses the names of the respondents to effectuate an intention which is neither expressed nor necessary to be implied. It has been repeatedly held that to support a gift by implication the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to present no other reasonable inference. (*Leggett* v. *Stevens*, 185 N. Y. 70; *Brown* v. *Quintard*, 177 id.

75; *Bradhurst* v. *Field*, 135 id. 564; *Post* v. *Hover*, 33 id. 593.)

In the case of *Leggett* v. *Stevens* (*supra*) there was a will in which there was a disposition of a certain fund to the testator's wife and an attempt to dispose of what was left of the fund after her death. The direction was that it " shall be equally divided between my adopted daughter, Helen S. Eldridge, * * * if she is living, if she has children to go to them, if not to go to my nearest a kin on my side." The testator left a son as well as the adopted daughter. From other parts of the will it was evident that the testator intended that, upon his wife's death, this fund should be divided between this son and the adopted daughter. But the son was not mentioned in the clause disposing of the particular fund, and the court held that, although the testator's intention might be gleaned from some other portion of the will, it could not import into it the name of the son for the purpose of effectuating the testator's probable intention.

It follows that, whether we take the plain language of the 11th, 12th or 13th clauses or search for the intention of the testatrix in the context of the will, it cannot be implied that she intended that the respondents, the children of her " deceased nephew," should share in the distribution of the trust funds or the residuary estate.

The decree of the Surrogate's Court should, therefore, be reversed, with costs against the respondents, and the proceedings remitted to that court to be there disposed of in accordance with the views here expressed.

All concurred.

Decree reversed, with costs against the respondents, and proceeding remitted to the surrogate for his action.