In the Matter of the Estate of HENRY L. SALYER, Deceased.

Surrogate's Court, Rockland County, August 27, 1931.

*Thomas W. Baker*, for John Van Horn and other first cousins.

*Ward & McGinnis* [*Hugh Spernow* of counsel], for Jessie A. (Swan) Bond and others.

*Morton Lexow*, for the petitioner Lafayette Trust Company of Suffern, administrator c. t. a.

*Leon M. Woodworth*, special guardian for Jean Flynn and another, infants.

SHERWOOD, S. The Lafayette Trust Company of Suffern, as the administrator with the will annexed of the estate of Henry L. Salyer, has filed its account as such administrator and asks for a judicial settlement of its account. It also asks for the construction of two clauses in the will of the decedent which read as follows: " To Henry Louis Swan, Two Hundred and Fifty Dollars to be paid to him at the age of eighteen years of age, the balance of my personal and real estate to my sister, Mrs. Margaretta Conklin and nephew, John W. Conklin, jointly during their lives.

"If John W. Conklin has issue, they shall receive the above real estate and personal property, at their deaths. If not the whole to be divided equally among my cousins."

This court is asked to construe the word "cousins" as used in the will and determine whether it includes only first cousins, or all cousins of every degree.

It is also asked to determine whether the remainder vested at the death of the testator or at the death of the survivor of the life tenants, and whether, when vested, the interest of the beneficiaries was devisable, descendible and assignable.

It appears that the decedent, Henry L. Salyer, died May 31, 1915, unmarried and without issue, leaving a will dated May 27, 1915, and was survived by both of the life tenants, Margaretta Conklin and John W. Conklin.

Margaretta Conklin died March 5, 1916, and John W. Conklin died October 30, 1928, without issue.

At the time of his death the said testator, Henry L. Salyer, had a large number of first cousins. A number of first cousins had died before he did, leaving children who survived the testator. A number of the first cousins died after the said testator and before the death of John W. Conklin, the longest liver of the two life tenants.

We will first take up the question whether the word "cousins," used in the will, included only first cousins living at the time of the testator's death, or included also the children of such of his first cousins as had predeceased him.

A cousin is defined in Bouvier's Law Dictionary as: "The son or daughter of a brother or sister of one's father or mother."

A cousin is further defined as: "The issue, respectively, of two brothers or two sisters, or of a brother and a sister."

The last definition might be construed to be broader than the first definition and to include second cousins as well as first cousins, but evidently the primary and first meaning of the word is that contained in the first definition given.

In 8 American and English Encyclopedia of Law, page 40, it is said: "When used alone 'cousin' means cousin-german or first cousin; that is, one who has the same grandfather or grandmother."

In support of this proposition are cited, among others, the English cases of *Caldecott* v. *Harrison* (9 Sim. 457); *Stevenson* v. *Abingdon* (31 Beav. 305) and *Stoddard* v. *Nelson* and *Stanger* v. *Nelson* (6 De G., M. & G. 68). The first mentioned case seems to be against the text, for the court (at p. 460) says: "I admit that the word 'cousins,' if used *simpliciter*, would include cousins of every

description. But the court frequently is obliged to put a restrictive sense on general words." The other two cases support the text.

In 31 Beavan, 305, the master of rolls said (at p. 308): " *Prima facie* the word cousin means first cousin, and not a first cousin once or more times removed; still less does it mean a second or third cousin which might go on indefinitely."

In *Stoddard* v. *Nelson* the chancellor said: " I think that, if a testator says no more than that he gives to ' cousins,' he must be taken to mean first cousins. That will be a practical construction, and one by which the parties entitled will be easily ascertained: it coincides too with ordinary experience, for when a person speaks of cousins he generally means first cousins, the children of an uncle or aunt; and I think that, in the present case, there being first cousins, this is the proper construction."

To the same effect are the cases of *Matter of Blum* (136 Misc. 441) and *Matter of Hering* (137 id. 867). There are other cases which have defined the words " nephews " and " nieces " and the word " children."

It has been held that the terms " nephews " and " nieces " " In their primary and ordinary sense do not include grandnephews and grandnieces or more remote descendants unless there is something in the will to show that the words were used in a broader sense." (*Matter of Van Riempst*, 178 App. Div. 475; *Matter of Woodward*, 117 N. Y. 522.)

It has been held that the word " children," used in a will, does not mean grandchildren unless there is something in the will other than the use of the word " children " to show that it was so intended. (*Matter of Pulis*, 220 N. Y. 196; *Matter of Keogh*, 126 App. Div. 285; *Pimel* v. *Betjemann*, 183 N. Y. 194.)

In the last-mentioned case the court said (at p. 200): " Nothing is better settled in the law of wills than that the term ' children ' does not include grandchildren or more remote descendants, unless there is something in the will to show that the word was used in a broader sense. This is not based on any technical rule of law; on the contrary, it is founded on the ordinary meaning of the word and the presumption that the testator has used the term in its ordinary sense."

I think that the cases which hold that the terms " grandnephews " and " grandnieces " do not include relatives of a more remote degree, unless it is so stated in the will, and the cases which hold that the word " children " does not include grandchildren, unless there is something to indicate in the will that that was the testator's intention, are authorities for the proposition that the word " cousins " used in the will under consideration means first cousins,

and not cousins of a more remote degree. There is nothing in the will under consideration to indicate what the testator meant when he used the word " cousins." It is my opinion that by the word " cousins " he meant first cousins, and that the first cousins of the testator are the class entitled to take under the paragraph of the will above quoted.

The further question arises as to when this class is to be determined, whether it is the first cousins who were alive at the time of the testator's death, or whether it is the first cousins who were alive at the time of the death of John W. Conklin, the longest liver of the two life tenants.

The will provided, in substance, that if John W. Conklin has issue the said issue shall take the residuary real and personal property devised and bequeathed to the testator's sister, Margaretta Conklin, and his nephew, John W. Conklin, for their lives, said issue to take upon the deaths of said life tenants, and the death of the last survivor, who was in point of fact, John W. Conklin; if there is no such issue then the whole is " to be divided equally among my cousins."

It is evident that it could not be determined until the death of John W. Conklin whether or not he would leave issue, and until that time arrived it could not be determined who would comprise the class referred to in the will as " my cousins." (Real Prop. Law, § 40; *Matter of Baer*, 147 N. Y. 348; *Dougherty* v. *Thompson*, 167 id. 472.)

In my opinion the first cousins of the testator who survived John W. Conklin, the longest liver of the two life beneficiaries, took the residuary estate upon his death.