# Wytheville.

## VAUGHAN AND OTHERS v. VAUGHAN'S EXECUTRIX.

### JULY 6, 1899.

1. WILLS—*Case in Judgment—Devise to Wife and " My Children "—Motive for Gift—" Children."*—A testator, by his will, declares: "I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children all of my property of every kind, real and personal, and do hereby appoint my wife my sole executrix, without security, as long as she shall remain my lawful widow; should she marry again, the minor children to choose guardians, and my wife, in that event, to take a child's part, to be hers as long as she lives, and at her death to be distributed amongst my children then living. I further request that no appraisement or other expense be made."

*Held:*

1. The wife takes a fee simple in the whole of the real estate, and the absolute title to the whole of the personal property, liable to be defeated " should she marry again "; the children being mentioned as the motive for the gift. The words " her children," " our children," and " my children," when used as here, mean substantially the same.

2. Upon marriage of the widow her estate is cut down to a life estate in a child's part of the estate, real and personal, and the remainder in such child's part passes to the children of the testator living at the death of the widow, and excluding the descendants of such children as may die between the marriage and death of the widow. The word " children," as here used, means immediate offspring.

3. The residue of the property, real and personal, after deducting a child's part for the widow, in the contingency provided for, is to be " divided equally among the children of the testator then living and the descendants of any that may be dead, such descendants to take *per stirpes.*"

Appeal from a decree of the Circuit Court of Hanover county, pronounced April 26, 1899, in a suit in chancery, wherein the

appellee was the complainant, and the appellants were the defendants.

*Amended and affirmed.*

This suit was instituted by Emma Lee Vaughan, as executrix of Isaac Newton Vaughan, and in her own right, against the infant children of Isaac Newton Vaughan, for the sole purpose of having a construction of the will of said Vaughan.

*Preston & Leake,* for the appellants.

*Christian & Christian* and *Leake & Carter,* for the appellee.

RIELY, J., delivered the opinion of the court.

The will to be construed in this case is short and concise, and may be quoted in full. After a clause revoking all previous wills, it reads as follows:

" I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children, all my property of every kind, real and personal, and do hereby appoint my wife my sole executrix without security as long as she shall remain my lawful widow; should she marry again the minor children to choose guardians, and my wife in that event to take a child's part, to be hers as long as she lives, and at her death to be distributed amongst my children then living. I further request that no appraisement or other expense be made."

It was argued for the appellants, that, according to the true construction of the will, the widow and children of the testator took a joint estate in the property, subject to the limitation of her share to her for her natural life, if she should marry again; and the contention in behalf of the appellee was that she took the entire estate, a fee-simple in the realty, and an absolute property in the personalty, subject to the limitation aforesaid in case she should marry again; and that, unless she should

marry again, the children take no estate under the will in the property of the testator.

If the testator had stopped at the end of the first clause, " I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children, all my property of every kind, real and personal," if this stood alone, and constituted all that related to the gift, it could not be doubted that she and the children would have taken a joint estate in all of the property. This would be the plain and natural import of the language. It would be difficult to use plainer or more explicit language than the above to express the intention, where the gift of a joint estate was the object of the testator. The testator, however, did not end the disposition of his property with the first clause, but went on to express himself further with regard to its disposition, and in the subsequent clause used language which negatives the idea that he intended to give the children a joint estate along with his wife.

If it was his intention to give his property jointly to his wife and children, then she in that case would simply take an equal share with each of the children, that is, a child's part. The testator left five children, and her interest would be one-sixth. But the will provides that if his wife should marry again, then, in that event, she is only to have a child's part. It is a plain deduction from this provision that the testator intended by it to reduce and diminish very materially the estate he had given to his wife in the previous clause of the will, if she should marry again.

It is contended that this plain manifestation of intention is satisfied by the limitation for her life of the share she would take in the case of a joint estate. If this view were correct, the testator would naturally have said that if she should marry again, she should only have in that case for her life the share of his estate given to her in the preceding clause of his will, or used some similar expression with regard to it. The language used is, however, very different and significant. The previous gift is to

be reduced and cut down to a child's part. It is not *the* child's part given to her, if he intended to give a joint estate to her and the children, that is to be restricted in the event of her marrying again, but the gift to her in the preceding clause is to be cut down to *a* child's part, and limited to her for life. This plainly implies that the previous gift was more than a child's part. It could only be the entire estate, for she took in the first instance either the fee in the whole, or only in a child's part. The will admits of no middle ground. The only harmonious construction to be drawn from all the provisions and words of the will, considered together, is that the testator intended to give to her the entire estate, but if she married again, then she was only to have a child's part for her life.

There are other considerations and provisions of the will that manifest this to have been the intention of the testator, and support this construction. In case of her remarriage " the minor children are to choose guardians." It is only in that contingency that he considers that there is any necessity for the appointment of guardians for his children. If they took a joint estate along with their mother during her widowhood, guardians would have been necessary to take charge of and manage their respective shares of the estate. But the entire estate being given to the wife, and the children not to acquire any interest unless she married again, guardians would not be necessary. The children would have no estate to be taken charge of and managed, and their mother would be their natural guardian and protector. It is only in the event that she should marry again, and the gift to her of the entire estate is restricted to a child's part, and the residue vested in the children, that they would have any estate; and it is only in that contingency that he, for the first time, deems it necessary that they have guardians.

The will manifests on its face the affection of the testator for his wife, and his unbounded confidence in her ability to manage wisely and successfully the large estate he died possessed of.

The whole will shows this. He appointed her his sole executrix, without security, and provided that there should be no appraisement of his estate. It would not be reasonable, in the face of this plain manifestation of his affection for her, and his confidence in her judgment and discretion, that he would have given her, by his will, less than, or only a small part of, what the law would have given her, if he had died intestate. Under the law, in the absence of a will, she would be entitled absolutely to one-third of the personalty, and also to one-third of the realty for her life. So that if he had intended to give to her and the children a joint estate, her share would scarcely, if at all, exceed one-half of what the law would give her. Moreover, the share of her husband's estate, to which a widow is entitled, and her right to renounce the will and claim such share, if not satisfied with the provision made for her, is so familiarly known that it is fair to presume that the testator was well aware of these rights. He would, therefore, hardly have risked interference with the scheme of his will and the disposition of his property by making the provision for his wife so much less than what the law would give to her that, to avoid injustice to herself, she would be compelled to renounce the will and claim her rights under the law.

In view of the circumstances adverted to, an intention to give to her merely a child's part of his estate, although she should never marry again, but always remain his widow, would have been unnatural, and the court would be slow to reach this conclusion, unless the language and provisions of the will precluded any other construction.

The testator doubtless thought that if he gave to her the entire estate, instead of creating several estates in her and the children, much expense would be saved; that she would wisely and prudently manage the property; judiciously spend the income and profits for her own maintenance, and for the maintenance and education of the children; and transmit to them the *corpus* at her death. But if she should marry again, she would probably

have other children and other objects of her affection and bounty, and he did not intend, in the contingency of her marrying again, to take any risk as to his children, and the whole estate was to be divested from her, except a child's part for her life, and go to his children.

This court has held, in a long line of cases, beginning with *Wallace* v. *Dold*, 3 Leigh, 258, that where the context and language of the instrument, whether a deed or will, taken together as a whole, manifest an intention that the mother should take the whole estate, although expressed to be to her and her children, the mention of the " children " in such case merely indicates the motive or consideration for the gift, and does not vest in them any interest. *Fackler* v. *Berry*, 95 Va. 565; *Walke* v. *Moore*, 95 Va. 729, and the cases there cited; and *Jones* v. *Jones' Adm'r*, 96 Va. 749.

The court is of opinion that the case under review plainly falls within that class of cases, and that Emma Lee Vaughan took a fee in the land and an absolute estate in the personalty, subject to the reduction of the gift to a child's part for the term of her natural life, if she should marry again.

The case was sought to be distinguished from the cases referred to by reason of the use of the words " my children," whereas the gift in that class of cases has generally been to the woman and " her children." We do not think that the use of the words " my children," instead of " her children," furnishes any ground for a different construction. In *Rhett* v. *Mason*, 18 Gratt. 541, the words " our children " were used, and the same construction was followed. The words " her children," " our children," and " my children," when used by a testator in such connection as in the case before us, mean substantially the same, and constitute no ground for any distinction or a different construction of the gift.

Nor was there error in holding that the child's part to be taken by the widow in the event of her marrying again should

go to the children of the testator then living. It is explicitly and expressly so provided. We may conjecture that the testator did not intend to exclude the descendants of any child that may have died; but if he wished to include them, he has not said so. The words of the will are that at her death it is " to be distributed amongst my children then living." The word " children," in its legal as well as in its ordinary and popular sense, means the immediate offspring of a man or woman, and does not include grandchildren or more remote descendants. The term is never used to include grandchildren or other persons than immediate descendants, in the absence, as in this case, of something showing a contrary intent. 2 Jarman on Wills (Bigelow's ed.) 147; 5 Am. & Eng. Ency. of Law, 1085; *Radcliffe* v. *Buckley,* 10 Vesey 195; *Moon* v. *Stone,* 19 Gratt. 130; *Tebbs* v. *Duval,* 17 Gratt. 349; *Morris* v. *Owen,* 2 Call 520; *James* v. *McWilliams,* 6 Munf. 302; *Thomason* v. *Andersons,* 4 Leigh 118; *Smith* v. *Chapman,* 1 H. & M. 240; and *Adams* v. *Law,* 17 How. 417.

Objection was also made to the decree as respects the distribution to be made of the residue of the estate, after segregating the child's part given to the widow for life in the event of her marriage, on the ground that the language is obscure. We do not think that there can be any real doubt as to the meaning of the decree, but to remove any obscurity or doubt, the language suggested by counsel for appellant, that the residue " be divided equally among the children of the testator then living and the descendants of any that may be dead, such descendants to take *per stirpes,*" will be adopted. The decree will be so amended, and as thus amended must be affirmed.

*Amended and affirmed.*