# Wytheville.

WHITE AND OTHERS v. OLD, EXECUTOR, AND OTHERS.

June 13, 1912.

Absent, Keith, P.

1. WILLS—*Construction—Primary Sense—Nieces and Nephews.*—Words in a will or other written instrument which have a definite primary meaning must be understood to be used in that sense, unless the intention to use them in some other sense manifestly appears. Hence, in the absence of evidence to the contrary, the words "nieces" and "nephews" must be confined to the children of a brother or sister, and will not embrace great-nieces and great-nephews.

2. WILLS—*Construction—Case in Judgment—Nieces and Nephews.*—A testator gave "to any niece or nephew of mine whom I have omitted or neglected in making the above provisions (excepting the children of Dr. Howell White, for whom I have provided as hereinbefore set out) the sum of three thousand dollars." Dr. Howell White was the testator's nephew, and, as his children were the grand-nieces and grand-nephews of the testator, it was claimed that the class to whom the legacies of three thousand dollars was given was thereby enlarged by implication so as to embrace grand-nieces and grand-nephews, but the contrary is held.

3. WILLS—*Public Library—Site—Subsequent Gift by Another.*—A devise to a public library (a corporation) of a lot as a site for a building, if it will erect or cause to be erected thereon a suitable building for a public library, is valid, and will be upheld where the lot is necessary to meet the growing needs and demands of the citizens in the community for another library building, and the devisee is ready, able, and willing to erect a suitable building thereon for a public library, although, after testator's death, and before his executor could carry out the provisions of his will, another citizen had given a site, and a public library building had been erected thereon by the devisee.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. The suit was brought by an executor for con-

struction of testator's will. The contest was between those claiming to be devisees and legatees under the will.

*Reversed in Part.*

The opinion states the case.

*N. T. Green* and *Maryus Jones,* for the appellants.

*J. B. Jenkins, W. W. Old, Jr., G. Tayloe Gwathmey, C. Whittle Sams,* and *A. B. Seldner,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This bill was filed by W. W. Old, executor of Henry Dubois Van Wyck, deceased, to construe two clauses of testator's will. The first of these clauses is as follows:

".To any niece or nephew of mine whom I have omitted or neglected in making the above provisions (excepting the children of Dr. Howell White, for whom I have provided as hereinbefore set out) the sum of three thousand dollars."

The testator was a widower, who had never had any children, and left surviving him a brother, and nieces and nephews, and grand-nieces and grand-nephews, descendants of four sisters who died before the execution of the will. Dr. Howell White, here mentioned, was a nephew, and appellees' contention is that the effect of the parenthetical language employed in the foregoing clause, referring to the children of Dr. White, who were grand-nieces and grand-nephews of the testator, manifests a purpose to enlarge the primary meaning of the words "any *niece* or *nephew,*" so as to include *grand-nieces* and *grand-nephews.* The trial court so construed the clause, and from that ruling the residuary legatees appealed.

The provision for the White children referred to occurs in a previous clause of the will, as follows: "To my niece, Kate Bartow, daughter of Dr. Howell White and Helena White, the sum of two thousand dollars, and to Dr. Howell White the sum of ten thousand dollars, for himself and his other children." There were

two Doctors Howell White, father and son.   That the first part of the preceding clause refers to the older White is made plain by the fact that he is the father of Kate Bartow; and that the subsequent bequest of $10,000.00 to Dr. Howell White, "for himself and his other children," has reference to Dr. Howell White, Jr., is shown by the circumstance that the only children of the elder Dr. White are Mrs. Kate Bartow and Dr. Howell White, Jr.   Besides, the pleadings show that the father predeceased the testator.   The adjective "other" which precedes "children" has no significance; and the conclusion that its insertion was a mere inadvertence gains color from the fact that, prior to the execution of the present will, the testator had, at different times, prepared three drafts of wills along the same general line, and, in the corresponding clause in each of these drafts the word "other" is omitted.

We pass, then, to the consideration of the concrete question involved in this branch of the controversy—namely, whether testator, in using the words "niece" and "nephew," intended to include grand-nieces and grand-nephews.

It is a canon of construction that words in a will or other written instrument which have a definite primary meaning must be understood to be used in that sense, unless an intention to use them in some other sense manifestly appears.   *Nye* v. *Lovitt,* 92 Va. 710, 24 S. E. 345; *Vaughan* v. *Vaughan,* 97 Va. 322, 33 S. E. 603; *Brett* v. *Donaghe,* 101 Va. 786, 45 S. E. 324; *Roberson* v. *Wampler,* 104 Va. 380, 51 S. E. 835, 1 L. R. A. (N. S.), 318; *Roanoke* v. *Blair,* 107 Va. 639, 60 S. E. 75.

In 3 Jarman on Wills (5th Am. ed., from 4th London ed., notes by Randolph & Talcott), p. 707, Rule XVI., the principle is thus stated: "That words, in general, are to be taken in their ordinary and grammatical sense only, unless the clear intention to use them in another can be collected, and that other can be ascertained."

In *Wooten* v. *Redd,* 12 Gratt. (53 Va.) 196, Judge Lee, at p. 205, observes: "Conjecture cannot be permitted to usurp the place of judicial conclusion, nor to supply what the testator has failed sufficiently to indicate."   *Warring* v. *Bosher,* 91 Va. 286, 21 S. E. 464; *Allison* v. *Allison,* 101 Va. 537, 44 S. E. 904, 63 L. R. A. 920.   See, also, the opinion of Mr. Justice Blackstone in *Perrin*

v. *Blake* (1771), Hargrave's Law Tracts 489–510; s. c., 10 Eng. Rul. Cases, 689.

In *Crook* v. *Whitely*, 7 De G. M. & G. 490 (44 Eng. Reprint, 191), Lord Chancellor Cranworth remarks: "According to the ordinary rule of construction, the word 'niece,' as used in this will, must be taken in its natural sense, which means the children of a brother or sister."

In Schouler on Wills, sec. 536, it is said: "Notwithstanding the equivocal sense of *nepos*, in Roman jurisprudence, 'nephew' means in English law the son and 'niece' the daughter of a brother or sister, and great-nephews and great-nieces are not embraced by the term."

So, in Lomax on Executors, 36, sub-sec. 15: " 'Nephews' and 'nieces' will not, upon the principles already stated with respect to the construction and enlargement of the term 'children' and 'grand-children,' ordinarily comprehend grand-nephews and grand-nieces."

The rule that "children means generally issue in the first degree, and does not embrace grandchildren," has been repeatedly decided by this court. *Smith* v. *Chapman*, 1 Hen. & Munf. (11 Va.) 246; *Thomasson* v. *Anderson*, 4 Leigh (31 Va.) at pp. 127–128; *Moon* v. *Stone*, 19 Gratt. (60 Va.) 130; *Waring* v. *Waring*, 96 Va. 641, 32 S. E. 150; *Vaughan* v. *Vaughan*, *supra*; *Brett* v. *Donaghe*, *supra*.

Looking, therefore, to the will as a whole, we find nothing upon which to lay hold as a safe guide to indicate an intention on the part of the testator to use the words "any niece or nephew of mine" in other than their primary or ordinary sense. It will be noted that, exclusive of the clause under interpretation, testator employs the word "niece" only twice in his will. He speaks of his "niece" Mrs. Van Geisen and of his "niece" Kate Bartow, and in each instance applies the word in its primary sense. On the other hand, the words "grand-niece" and "grand-nephew" do not occur in the entire will, but legatees of that class are designated either by name or as the "children" of their parents.

*In re Woodward*, 117 N. Y. 522, 23 N. E. 120, 7 L. R. A. 367, the court uses this language: "As to the appellants, they are called by the testator, not 'nephews' or 'nieces,' but 'children,' of his

deceased 'niece,' and in the same clause are twice referred to in that manner—a discrimination in language and choice of words of description which indicate no intention to include the persons named with nephews and nieces, but the contrary. It is obvious that the testator had in his mind the different degrees of relationship of his various beneficiaries, and the selection of different words to describe them cannot be attributed to mistake or inadvertence."

It moreover appears that testator had a niece, Mrs. Catherine S. Parks, who was omitted from his will, and that fact satisfies the language of the clause in judgment, other than the parenthetical proviso. Mrs. Parks having died, her legacy was paid to her children. Yet, if the construction given to the clause be correct, each of these children of Mrs. Parks, in addition to their mother's portion, is entitled to receive a legacy of $3,000.00, which could hardly have been testator's intention.

In *Shelly* v. *Bryan* (1821), Jacobs 207, (37 Eng. Reprint 824) a leading case on the meaning of "nieces" and "nephews," Sir Thomas Plummer, M. R., says: "But it would be contrary to the authorities to interpret a term having a proper application to one class as extending to two classes, comprising both parents and children."

And in *Crook* v. *Whitely, supra,* Lord Chancellor Chanworth observes: "But I do not know any case in which it has been held that the same words can be construed to include persons of different degrees in the same class."

This brings us to the consideration of the force to be given the parenthetical words, upon which the decision of the court of law and chancery seems to have been rested, in the clause under construction: "To any niece or nephew of mine whom I have omitted or neglected in making the above provisions (excepting the children of Dr. Howell White, for whom I have provided as hereinbefore set out) the sum of three thousand dollars."

The argument is based on the ground that, as Dr. Howell White was himself a nephew of testator and his children grand-nieces and grand-nephews, the parenthetical words would be useless unless the testator intended to include grand-nieces and grand-nephews in the expression "any niece or nephew of mine."

The clause, as a whole, is, at most, only a precautionary one,

intended to avoid the possibility of pretermitting any of a named class. But in no aspect of the situation is the parenthetical exception necessary to effectuate any intention of the testator. It, in terms, applies only to "omitted or neglected" nieces and nephews, and (even if grand-nieces and grand-nephews were intended to be included) it could, by no possibility, have affected the rights of the children of Dr. Howell White, who were neither "omitted" nor "neglected," but had already been provided for. So that the contention amounts to this, that a useless provision in a precautionary clause in a will shall, by implication, be given the effect of introducing a new class of beneficiaries, embraced by no other language of the will. Such a deduction from an implication affords a most unsafe guide in the exposition of wills or other writings.

In this connection it would be wise to keep in mind the admonition of Sir William James, L. J., *In re Blowers Trust.* (1870), L. R. Chy. App. Cases, 350, (a case like the instant case, where it was sought to vary the ordinary meaning of the words "nephews and nieces" so as to include "grand-nephews and grand-nieces"): "But before we alter the meaning of words in obedience to a supposed indication of intention of the testator, before we deviate from the direct path in order to follow a light which appears to be held out by the testator, we must take care to be reasonably sure that it is a genuine light, and that we are not following the glare of a will-o'-the-wisp into a morass."

The effect of provisoes and exceptions in a statute was luminously considered by the House of Lords in *The Guardians of the Poor* v. *Metropolitan Life Assurance Society*, A. C. (1897) 647, a number of their lordships delivering opinions. Lord Chancellor Hallsbury says: "It (his construction of the act) satisfies the words, whilst the other view (that the proviso enlarged the enacting clause) gives to the proviso a meaning which I think would be most formidable, not merely with reference to the question which is now under debate before your lordships, but also, as a matter of construction, that a proviso could be so read as to suggest that the previous part of the section of which it is a proviso should imply by law the existence of words there of which there is not a trace in the previous words of the section itself. My lords, that

certainly would be a very serious invasion upon any rule of con-struction by which any document, whether an act of Parliament, or anything else, has ever been construed, and I should be very much averse, indeed, to lend any countenance to such a mode of construing a proviso."

Lord Davey said the whole argument was based on "the old and apparently ineradicable fallacy of importing into an enactment which is expressed in clear and apparently unambiguous language something which is not contained in it, by what is called implica-tion from the language of a proviso which may or may not have a meaning of its own." Sutherland Stat. Constr., sec. 222; *Tinkham* v. *Tapscott*, 17 N. Y. 141, 152; *Baggaley* v. *Pittsburg & L. S. I. Co.* (C. C. A.), 90 Fed. 636, 36 C. C. A. 202.

The provision of the will construed in *Cromer* v. *Pinckney*, 3 Barb. Chy. (N. Y.) 466, cited in the opinion of the trial court, was essentially different from the clause before us. The language of the bequest in that case was "to the children of my nephew, John Cromer." John Cromer, though a grand-nephew, was described as a "nephew," which showed conclusively that the word "nephew" was not used by the testator in its primary sense.

Our conclusion, therefore, upon this branch of the case, is that testator used the words "niece" and "nephew" in their ordinary sense, and that the court of law and chancery erred in holding that those words embraced great-nieces and great-nephews.

The other clause of the will involved in this appeal is as follows: "If, under the decision of the Supreme Court of Appeals of Virginia, recently rendered in the suit therein pending involving the construction of my wife's will, I shall receive my distributive share of her estate free from the claims of fees of the attorneys asserted therein, then I desire my executor to purchase a lot in the city of Norfolk, Virginia, for the purpose of having erected thereon a building for a public library, he to use and invest the money necessary to purchase the said lot as he may think best, and such lot so purchased I devise and bequeath to the Norfolk Public Library, a corporation chartered by the State of Virginia, if the said corporation will erect, or have erected, a suitable building thereon for a public library, and desire my executor to make, or have made, the proper conveyance of the said lot to the said cor-poration."

The decree appealed from upholds this provision of the will. The executor was not able to carry out the provision immediately upon taking charge of the estate; and, subsequently, the family of the late Dr. William Selden donated a lot as a site for a library building, and the corporation, with funds furnished for the purpose by Andrew Carnegie, erected a public library thereon. Nevertheless, the corporation insists that it is not limited to a single library building; and that the lot in question is necessary to meet the growing needs and demands of the citizens of Norfolk for another library building in the interest of literary improvement. And it insists upon its capacity to take and hold the lot donated by the testator, and its ability and readiness to erect or cause to be erected thereon a suitable building for a public library, as provided for in testator's will.

In these circumstances, there was plainly no error in the decree appealed from sustaining the devise.

Upon the whole case, the decree must be reversed in part and affirmed in part, as outlined in this opinion.

*Reversed in Part.*