# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## Dickerson and Another v. Dickerson.

September 21, 1922.

1. **Deeds**—*Construction*—*Grant of Farm by a Father and Husband to His Wife and Certain of His Children as a Home for Them while They Live Upon It*—*Case at Bar.*—In the instant case the grantor, after reserving a life estate for himself, desiring to secure a home for them deeded to his wife and seven of his children the farm upon which he and his family resided, providing that after his death the grantees would hold and occupy the land during their natural lives and the lives of the survivors of them and at the death of all of them the land to go to their heirs at law. "This land is to be a home for any or all of the parties of the second part who may choose to live on same, and in case any of them should leave the place and go elsewhere to live, they are not to share in or have any of the products of said land while so living away, but those of them who remain and live on the place are to use the same for themselves." At the time of the deed the father had other lands, and three married children who had left the parental home, and these three inherited the other lands. The children provided for in the deed were unmarried.

   *Held:* That the grantor sought to establish a home for the grantees, to be the permanent abode of those who elected to make it so, with the right of those who had not abandoned it to return at pleasure and enjoy the privileges granted by the deed. The rights of the grantees, therefore, did not extend to a partition of the farm, nor to the rearing of several distinct families in the same home. Neither did it extend to the management or control by any one or more of the grantees to the exclusion of. others. The farm was to be one home, for one family and that family was to be composed of such of the grantees—not their wives and children—as might choose to live on the place.

2. **Deeds**—*Construction*—*Grant of Farm by a Father and Husband to His Wife and Certain of His Children as a Home for Them while They Live Upon It*—*Case at Bar.*—The grant by a father to certain of his children of the right to live on the home place and of the right to return was a personal right of the grantees only and did not extend to the wives and children of the grantees. Under such grant it could not be presumed that the grantor intended to offer any inducement to one of his children who had established a home of his own elsewhere, to desert his or her consort and children merely

to share in his father's benefaction. The provision is to be construed rather to apply to some prodigal, who might have gone "elsewhere to live," without establishing a home for others, and who, on account of misfortune, necessity, or a mere longing for home, wished to return.

Appeal from a decree of the Circuit Court of Floyd county.   Decree for complainant.   Defendants appeal.

*Amended and affirmed.*

The opinion states the case.

*Proffitt & Weeks* and *Harless & Colhoun,* for the appellants.

*J. E. Burwell* and *V. M. Sowder,* for the appellee.

BURKS, J., delivered the opinion of the court.

The object of this suit was to obtain the proper construction of a deed made by Coffee Dickerson in 1898 to his wife and seven of his ten children. So much of that deed as is involved in the controversy is in the following words and figures, to-wit:

"This deed made the 20th day of December, 1898, between Coffee Dickerson, of the first part, and Catherine Dickerson, the wife of Coffee Dickerson, and Rhoda Dickerson, Malira Dickerson, Elizabeth Dickerson, Cornelius Dickerson, Peter Dickerson, Walter Dickerson and Posey Dickerson, children of said Coffee Dickerson and Catherine Dickerson:

"Witnesseth: That the said Coffee Dickerson for and in consideration of the natural love and affection which he has for his said wife and children and desiring to secure a home for them after his death, hereby grant and convey unto the said Catherine Dickerson,

Rhoda Dickerson, Malera Dickerson, Cornelius Dickerson, Peter Dickerson, Walter Dickerson and Posey Dickerson and Elizabeth Dickerson, reserving a life estate for himself and full control, management and occupation during his life time, that tract of land upon which he, the said Coffee Dickerson, and family, now reside, lying in Floyd county, on the West Fork of Little river, containing about 130 acres and is the same tract of land conveyed to the said Coffee Dickerson by Moses Dickerson, by deed dated 30th day of January, 1869, and recorded in deed book L, page 617, in the clerk's office of the County Court of Floyd county, to which deed reference is hereby made for a more particular description of said land. After the death of said Coffee Dickerson the said parties of the second part are to have, hold and occupy said land during their natural lives and the lives of the survivors of them, and at the death of all of said parties of the second part the land is to go to the heirs at law of all of said seven children. This deed is made in lieu of dower to the said Catherine Dickerson, should she survive her husband, the said Coffee Dickerson, in any and all his real estate owned by the said Coffee Dickerson, and is further for the full share and interest of all the seven children of the said Coffee Dickerson that they might have in any other lands owned by said Coffee Dickerson at his death and as to which he may die intestate. This land is to be a home for any or all of the parties of the second part who may choose to live on same, and in case any of them should leave the place and go elsewhere to live, they are not to share in or have any of the products of said land while so living away, but those of them who remain and live on the place are to use the same for themselves, and those who use and occupy the land shall pay all

taxes assessed on same, but none of the parties are to in any way have the right to use or control said land during the lifetime of the said Coffee Dickerson; he, as aforesaid, reserves for himself full and complete control and ownership during his lifetime. And the said Coffee Dickerson reserves the further right, that in case any of said children die before he does to dispose of the interest of any so dying, in said land either by deed or will.''

At the time this deed was made Coffee Dickerson owned other lands besides the one hundred and thirty acres conveyed as aforesaid, and had three other children who had married and left the parental home, and these three inherited said other lands. The seven children mentioned in the deed were not married and still constituted members of the grantor's family. Coffee Dickerson died in 1898 and his widow died in 1910. Four of the seven children provided for in the deed died, unmarried and without issue prior to the institution of this suit, leaving surviving them Elizabeth, sometimes called Bettie, who was the complainant in the court below, and is appellee in this court, and her two brothers, Peter Dickerson and Walter Dickerson, the appellants. Peter Dickerson continued to live at the old home until October, 1901, when he married and went off and made a home for himself. He now lives in a good home on his farm supplied with acetylene gas, and with water and other modern conveniences. He has recently gone back to the old home tract and erected thereon a small cabin, or shack, in which he and his boy sleep, with a view of claiming a present share in the 130 acres tract, but his claim is so utterly without merit that it need not be further noticed. Walter Dickerson married in June, 1902, and immediately went West to live and remained

there two years.   He then returned and went upon a part of the old homestead and built a dwelling house of five rooms and began the cultivation of the farm, paying to his mother, during her lifetime, and after her death to his sister Bettie a part of the crops as rent.   In 1917, his brother, Posey, one of the grantees in the deed, joined the army and entered into a written contract with Walter by which the latter was given immediate possession of the tract of 116 acres of land belonging to Posey, and for which Posey had paid $5,200.00.   Walter was to pay the taxes, keep up the fences and cultivate the land in such manner as he deemed best, and to have all the proceeds, and in the event that Posey never returned home, the farm was to be the property of Walter.   The farm had upon it a good dwelling house and furniture therein.   Posey never returned to claim the farm and died in February, 1919, leaving Walter the owner in fee of the farm. Soon after this contract was entered into Walter moved his family and effects to the 116 acre farm, known as the Howard place, and remained there for two years. He left some portion of his furniture in his former home and occasionally slept there, but the evidence indicates a *bona fide* removal as a home.   He has a wife and six children.   In 1919 he moved back into the house he had built and formerly occupied on the 130 acre tract for no other purpose than to claim present rights under the Coffee Dickerson deed, and to graze and cultivate the farm.   When asked if his object in moving back was to get the use of the place, he said, "Yes, to exercise and hold my rights under the deed."   His brother Posey not only left him the house and farm, but also one-half of his government insurance.   It seems, however, that he was short of pasturage and could not rent any, and that one of the

chief reasons for returning was to secure needed pasturage.

[1, 2] The rules for the construction of wills, deeds and other written instruments have been stated so often and so recently as not to need repetition. See *Temple's* Adm'r v. *Wright*, 94 Va. 340, 26 S. E. 844; *White* v. *Old*, 113 Va. 709, 75 S. E. 182, L. R. A. 1916F, 787; *Conrad* v. *Conrad's Ex'r*, 123 Va. 716, 97 S. E. 336.

In 1898, when the deed was made, there was a single dwelling house on the land granted, and in it there dwelt a father and mother, and their seven unmarried children. This was their home. It was no longer the home of the three who had married and left the parental homestead. It was natural to suppose that some, at least, of the remaining seven would do likewise, but some might not. The grantor evidently desired especially to provide for the latter. The expressed object of the deed was "to secure a home" for his widow and unmarried children. The grantor sought to establish a home for the otherwise homeless, just as his home on that tract of land then was. A haven of rest from the troubles of life, a place where there would be mutual love and sympathy, and they could enjoy the pleasures of social life. It was to be the permanent abode of those who elected to make it so, with the right of those who had not abandoned it to return at pleasure and enjoy the privileges granted by the deed. But the privilege was not extended beyond this. It did not extend to a partition of the farm, nor to the rearing of several distinct families in the same home. Neither did it extend to the management or control by any one or more of the grantees to the exclusion of others. The tract of land was granted as a unit, and the home was established as a unit. The farm

was to be one home, for one family, and that family was to be composed of such of the grantees—not their wives and children—as might choose to live on the place, and not go elsewhere to live.   The fact that the grantor excluded his married children from the grant is some evidence of when this home privilege was to cease as to the grantees.   He was not making provision for the families of the grantees.   If the seven grantees all married it was not practical that there should be seven families reared in the one house.   It must have been intended that as each of the seven children married and moved off the place, he or she, with his or her consort, would constitute a new family unit, with a new and independent home of their own, and with no right to return to the family homestead provided by the deed.   It is said, however, that effect must be given to every word and clause of the deed, and that the deed declares that if any of them should leave the place and go elsewhere to live, they are not to share in or have any of the products of said land, while so living away, and that this is a grant of the right to return.   The grant of the right to live on the place and of the right to return was a personal right of the grantees only, and was not extended to the wives and children of the grantees.   It is not to be presumed that the grantor intended to offer any inducement to one of his children who had established a home of his own elsewhere, to desert his or her consort and children, to break up his or her home, merely to share in his benefaction.   The provision will be construed rather to apply to some prodigal, who may have gone "elsewhere to live," without establishing a home for others, and who, on account of misfortune, or necessity, or a mere longing for home and its comforts, wishes to return.   Such a construction gives effect to every

word and clause of the deed and seems most consonant with the intent of the grantor.

The appellee, Elizabeth Dickerson, is the only one of the grantees who measures up to the requirements of the deed. She has lived on the place as a home continuously since the death of her father and is still living there. The claim of Peter Dickerson, after an absence from the place of twenty years, of the right to return to the farm and erect a separate dwelling thereon and to share the profits to be derived therefrom, is frivolous. Walter Dickerson married in June, 1902, and moved off the farm and went West and lived for two years, returning in the fall of 1904. He then built a house on the farm and lived there till 1917, when he removed his family to the Howard place given him by his brother, Posey. This place has a good dwelling house on it. Here he remained for two years, but returned in 1919, for the avowed purpose of exercising and holding his rights under the deed. He had no rights under the deed to partition the farm, nor to bring his wife and six children to live in the home of his sister provided by the deed, nor to take from her, or interfere with, her management of the farm. The trial court was of opinion that "Elizabeth Dickerson is the only one of the grantees named in the deed from Coffee Dickerson, dated the 20th day of December, 1898, a copy of which is filed with the bill of complaint, who has complied with the conditions of the said deed, and that she is entitled to have the place described in said deed as a unit, so long as she continues to comply with the conditions of the same, but not to commit waste, and that she is entitled to enjoy the said place without let or hindrance of the defendants, and that neither Peter nor Walter have complied with the terms of said deed and do not live or have a home on said place."

This opinion overlooks the fact that Peter and Walter Dickerson, or one of them, may become homeless in the future, in which event each, upon becoming homeless, would have the right under the terms of the deed from Coffee Dickerson, of December 20, 1898, to return and take his place in the home on the land conveyed by said deed, and enjoy the rights and privileges thereby conferred.

The decree of the trial court will, therefore, be so amended as to provide for that contingency, and, as amended, it will be affirmed.

*Amended and affirmed.*