McMULLEN et al. v. BLOCK et al.

No. 9298.

Court of Civil Appeals of Texas. Austin.

Jan. 27, 1943.

Rehearing Denied Feb. 17, 1943.

Paul Petty, of Ballinger, and Frank Hartgraves, of Menard, for appellants.

Doss & Overshiner, of Abilene, for appellees.

BLAIR, Justice.

This is a trespass to try title suit to 320 acres of land, but involves only the construction of the will of Franz Block, Sr., to determine (1) whether it bequeathed the land to appellant, the only child of testator and his second wife, Bertha Block, or whether it also bequeathed an interest in the land to appellees, his nine children of a first marriage; and (2) if so, whether it bequeathed the land to each set of children as a class, that is, one-half to each set of children, or individually and equally to his ten children of the two marriages.

The will was drawn by their priest, and was signed by both Franz and Bertha Block on April 13, 1914, and the material portions read:

"(1). First, I desire that all my just debts be paid, including $320 three hundred and twenty dollar— for each child of my marriage with Augusta Knoff, (whenever they have reached the age of maturity).

"(2). The remainder I bequeath to my present wife, Bertha Liedig conditionally however that after my death and her death everything goes to mine and her children, equally, divided.

   "Franz Block
   "Bertha Block (Liedig)
"Witnesses:
"L. J. Strube
"Ed. Hoelscher

"If however I Bertha Liedig will die before my husband Frank Block, everything I have and posses—, I bequeath to him, conditionally however that after his death, everything will be equally divided between his and my children.
As administrator we appoint Frank Block Junior with bonds.
   "Franz Block
   "Bertha Block (Liedig)
"Witnesses:
"L. J. Strube
"Ed Hoelscher."

The trial court trying the case without a jury construed the will as bequeathing the land to the ten children of both marriages equally, and accordingly awarded an undivided 9/10 interest to appellees, the nine children of the first marriage, and an undivided 1/10 interest to appellant, the only child of the second marriage; and found that the land was not susceptible of partition in kind, and appointed a receiver to sell it and apportion the proceeds 1/10 to each of the ten children.

We sustain the trial court's construction of the will and affirm its judgment.

Appellant contends that the decision must turn upon the meaning of the term or phrase "mine and her children," as used in paragraph "2" of the will; that "mine", as defined by Webster's Dictionary, is a pronoun and adjective, meaning "of or belonging to me"; and that "her", as defined by the same authority, is a possessive pronoun and adjective, meaning "hers or belonging to her"; that when the testator used the word "mine" to designate his children he could have meant all children by both marriages; but that by using the limiting word "her", he excluded from the group "mine children" all children except those belonging to himself and his second wife, Bertha Block; and that therefore the trial court erred in not construing the will as bequeathing the remainder of the estate after the death of the second wife to the child of the second marriage. In this connection appellant concedes that the use of the word "mine" is grammatically incorrect, and that by the use of the word the testator evidently meant "my children." We think this is correct; but we do not agree with the contention that the word "her" so limited the term "my children" as to exclude testator's children of the first marriage. The term "my children" is equally descriptive of testator's children of both marriages, and therefore an ambiguity arises as to the person or persons to whom testator intended to bequeath his property, and extrinsic evidence became admissible to enable the court to identify the person or persons mentioned as "my children".

In the early case of Carroll v. Carroll, 20 Tex. 731, the Supreme Court held that the term "my children" as used in a bequest meant all the children of the testator, whether by his present or a former wife. This definition of the term "my children" is cited in 27 Words and Phrases, Perm.Ed., p. 965; and in addition the same authority defines the term "my children", as follows: "The words 'her children,' 'our children,' and 'my children,' used by a testator in making devises or bequests to his wife and his children, mean substantially the same, and constitute no ground for

any distinction or a different construction of the gift than the usual acceptation of the term 'children.' Vaughan v. Vaughan's Ex'x, 33 S.E. 603, 605, 97 Va. 322."

Numerous Texas decisions hold that when there arises ambiguity in the application of such terms as "our children", "her children", "their children", and "my children", the courts will resort to extrinsic evidence in order to identify the person or persons named as beneficiaries under a will; and that such extrinsic evidence may relate to every material fact for the purpose of showing the object of the testator's bounty, the property devised, the quality of interest intended to be given, and when a beneficiary or beneficiaries are not designated with precision, such evidence is admissible to identify the person or persons mentioned. See 44 Tex.Jur., p. 758–760, § 189, and the cases there cited. This was the rule applied by the trial court. The extrinsic evidence adduced and which is sufficient to sustain the finding of the trial court that the testator by the term "mine children," or my children, intended to include all of his children by both marriages, is substantially as follows:

The testator, Franz Block, was twice married, first to Augusta Block, who died in 1911, leaving her husband and ten children, one of whom, Adolph, later died when he was about 21 years of age, but without issue. The 320 acres of land in suit was the community property of this marriage. After the death of the first wife the children who had reached the age of 21 years, "acting for themselves, and for their minor brothers" (naming five of them), executed an instrument in writing, dated April 13, 1912, and prior to testator's second marriage in October, 1912, conveying the one-half interest in the land which they had inherited from their mother to their father, Franz Block, who agreed to pay them $320 each for their respective interests. Prior to his death, Franz Block paid each child who had become of age $320, and after his death the administrator named in the will paid into the registry of the probate court $320 for each of four children who were minors at the time of the death of Franz Block, in May, 1916; and as each became of age he receipted for and was paid the $320 for his interest in the mother's estate. Thus the 320 acres of land became the separate property of Franz Block, and has been so considered by all his children of both marriages. These facts make plain the meaning of the provision in paragraph "1" of the will directing that testator's just debts be paid, "including $320 three hundred and twenty dollars for each child of my marriage with Augusta Knoff (whenever they have reached the age of maturity)." This provision did not bequeath out of testator's estate $320 to each of the minor children of the first marriage, but directed that each such child be paid that sum as a debt justly due him, which was the amount testator agreed to pay under the written contract above mentioned to each child of the first marriage for the interest inherited from their mother. So testator gave nothing to any child of his first marriage unless the words "mine and her children, equally divided," be construed as bequeathing the land to the ten children of the two marriages equally. Justice and fairness dictate such a construction. The minors, as well as all of the children of the first marriage, were as much the objects of the bounty of testator as were the wife and child of the second marriage. They lived with testator and his first wife and by their labor helped to acquire the 320 acres of land in suit. Some of them remained and worked on the land after they reached their majority, and some of them and all of the minors remained and worked on the land after the second marriage and after the death of testator. The relationship of all children of the first marriage and the wife and child of the second marriage was the very best, and each child of the first marriage was shown to be dutiful and obedient. The oldest child of the first marriage was made the administrator by both testator and the second wife of their respective wills. Manifestly, the testator by the use of the words "mine children" intended to bequeath his property to his ten children of the two marriages.

This construction of the will is in accord with the decision in Crosson v. Dwyer, 9 Tex.Civ.App. 482, 30 S.W. 929, writ refused, wherein the term "children" was held to include all of the testator's children of different marriages; and is in accord with the rule succinctly stated in 69 C.J. 179, as follows: "Children by Different Marriages: In the absence of a manifest intention to the contrary shown by the express terms of the will, or by necessary implication, the word 'children' in a devise or bequest will include children by various marriages of the parent named."

When this meaning is given to the term "children", we think that when testator directed in paragraph "2" of his will that after his death and after the death of his second wife everything "goes to mine and her children, equally," he intended that his children take the land and her children take the land equally. To construe the will otherwise and as contended for by appellant would read into the will an instruction or direction that only the child or children of the second marriage would take under the will, which direction is not found in the will, nor in any necessary implication to that effect which might arise from any ambiguous language of the will.

■ In further arguing to the point that by the use of the language "mine and her children" testator intended to bequeath the land to the child or children of the second marriage, appellant introduced, over the objection of appellees, the probate proceedings instituted in 1926 by Bertha Block, as guardian of the estate of appellant Ursula Block, then twelve years of age, and in which the inventory listed the land in suit as being owned in fee simple by her, subject to the life estate of Bertha Block, the guardian; and which probate proceedings were instituted for the purpose of making a mineral lease on the land. Notice of the application for permission to lease the land for mineral exploration was published in a local newspaper, August 26, 1926, which recited that the fee simple title was in appellant, subject to the life estate of the guardian. The order of the court approved the lease in September, 1926, and the lease was executed September 3, 1926, each reciting that the fee simple title in the 320 acres of land in suit was in appellant Ursula Block, subject to the life estate of Bertha Block. Appellant introduced these proceedings and here contends that same have "two distinct bearings on the case", as follows:

"First. It confirms the words 'mine and her children' used in the will insofar as Bertha Block's understanding of the will was concerned;

"Second: It indicates the plaintiffs also understood it that way and did not raise the question until after the death of the last of the signers of the will. This evidence also tends to show that the 10 year statute of limitation had run in favor of Ursula Block as pleaded and claimed by the defendants."

The statement that "this evidence also tends to show that the 10 year statute of limitation had run in favor of Ursula Block as pleaded and claimed by the defendants" is the only reference made in the brief as to any issue of limitation. If limitation were an issue, the trial court's judgment disposed of it against the contention of appellant, and on evidence which appellant states only "tends to show" limitation. No contention is made that the guardianship proceedings conclusively established the claim of ownership of the land in either appellant or her mother, the life tenant of the land under the will. There was no proof that appellees had any notice of the guardianship proceedings, and they were not parties to it. No claim is made that either Bertha Block or appellant, who were in possession of the land under the will, which was duly probated, with other children of testator after the death of testator until they became of legal age, ever repudiated the relationship of life tenant and remaindermen under the will. The first claim of ownership of appellant, and notice thereof to appellees, came after the death of Bertha Block, the life tenant, in 1941. See Art. 4108, R.S. 1925; 2 Tex. Jur. 117 and 144, 145. The listing of the land as the property of appellant, subject to the life estate of Bertha Block, in the guardianship proceedings, which occurred more than ten years after the death of testator and the probate of his will, is not conclusive on the remaindermen of the will as to such ownership. Hanks v. Magnolia Pet. Co., Tex.Com.App., 24 S.W.2d 5.

If, as contended by appellant, the conduct of Bertha Block in instituting the guardianship proceedings in 1926, more than twelve years after the will was executed and ten years after it was probated, wherein the 320 acres was inventoried and claimed to be the property in fee simple of appellant, subject to the life estate of Bertha Block, was admissible as confirming what she understood the words "mine and her children" as used in the will to mean, then such conduct and facts only tended to show such understanding on her part, and were in no manner conclusive of the matter. If admissible for any purpose, such conduct and facts merely constituted extrinsic evidence to aid the court in determining what children testator meant by the bequest to "mine and her children, equally"; and as above held the trial court, aided by proper extrinsic evidence, cor-

rectly construed this language to mean the ten children of testator by both marriages.

■ Nor do we sustain the second contention of appellant to the effect that if the will be construed as bequeathing an interest to the children of the first marriage, it should then be construed as having bequeathed the property to them as a class—one-half to each set of children. The trial court construed the will, aided by the extrinsic evidence above detailed, as bequeathing the property to the ten children of the two marriages "equally divided," which construction we have sustained. Suffice it to say, that no ambiguous language appears in the will which might be construed as being descriptive of a class bequest; and no extrinsic evidence which might tend to describe a class bequest was adduced. The only reference made to a family group or set of children is in paragraph "1", wherein testator merely directs that the just debts of $320 be paid to each minor child of the first marriage when they reached maturity. The term "mine children" or my children as used in the bequest is not descriptive of different classes or sets of children, but means all children of the testator by both marriages, and to whom testator bequeathed his property, and to be "equally divided."

In Hagood v. Hagood, Tex.Civ.App., 186 S.W. 220, 225, the court held: "A 'class,' as used in the law of wills, is where several persons answering the same description sustain the same relation to the legacy so that one word describes them all; each takes an equal share in the property, and each takes originally, and not by way of substitution or derivatively, and each takes absolutely. A number of persons are said to form a 'class' when they can be designated by the same general name as 'children,' 'grandchildren,' 'nephews,' 'brothers,' or 'sisters.' The gift must be an aggregate sum to a body of persons uncertain in number at the time of the gift."

■ And where a will designates a "class" by name as "my children," and then directs that the property bequeathed be "equally divided," or by other similar words, the persons among whom the division is to be made take per capita. Or, as is stated in 69 C.J. 288, 289: " 'Equally to be divided' when used in a will means a division per capita and not per stirpes, whether the devisees are children and grandchildren, brothers or sisters, nephews and nieces, or strangers in blood to the testator. Doe v. Roe, [2 Har. 103] 2 Del. 103, 29 Am.Dec. 336; Priester's Estate, 23 Pa.Super. 386."

■ The remaining contention is that the judgment should be reversed and the cause remanded because, over the objections of appellant, the trial court permitted the witnesses of the will and others to testify in effect that testator, Franz Block, and testatrix, Bertha Block, told the scrivener of the will that they intended that each of the ten children of the two marriages should be beneficiaries of the written will, which was later drawn describing the beneficiaries as "mine and her children," or with respect to her will as "his and my children." Other similar statements after the will was executed were attributed to Bertha Block. This testimony was admitted at the time offered by the judge trying the case without a jury, and the case was taken under advisement for about a week, at which time the judge sustained the objections to such testimony, struck it from the record, and rendered the aforementioned judgment. Succinctly stated, appellant presents the contention in the form of a question: "Could the court permit it to be introduced, over timely objections, close the evidence and argument, and a week later sustain the objections to it, and not be in error?" In this connection appellant cites several cases which hold in substance that where improper evidence is admitted in the trial of a case to a court without a jury, the judgment will be reversed if it recites facts, or if the record otherwise discloses that the judge was influenced by the improper evidence in rendering the judgment. These cases are not in point, because the trial judge expressly sustained the objection to the testimony, and struck it from the record; and as against this action no presumption can arise that the trial judge considered the improper evidence or that he was influenced by it in rendering his judgment, which as hereinabove pointed out was based upon a proper construction of the will, as aided by the proper and sufficient extrinsic evidence adduced.

The judgment of the trial court is affirmed.

Affirmed.