**DICKERSON et al. v. YARBROUGH et al.**

No. 13923.

Court of Civil Appeals of Texas. Dallas.

June 4, 1948.

L. F. Sanders, of Canton, for appellants.

H. C. Geddie, of Canton, for appellees.

YOUNG, Justice.

Suit below was for the construction of a will, instituted by Louveria Yarbrough and husband against A. M. Dickerson, Administrator of the Estate of C. H. Payton, deceased, and some fifteen nieces and nephews of decedent. Upon a hearing, judgment was rendered adverse to defendants who have brought up this record for review in form of transcript and stipulations of fact.

The testamentary instrument was joint in character and, omitting formal parts, provides: "Know all men by these presents that we C. H. Payton and his wife Martha Payton each being of sound mind and disposing memory and being desirous of making a disposition of our property while we have the mind and strength so to do have this day and do by these presents make execute and publish this our last will and testament. It is the will and desire of each of us that whichever one of us shall survive the other shall have and hold all of our property of which we or either of us may die seized and possessed —That is to say if the said Martha Payton shall survive the said C. H. Payton then all the estate real personal and mixed belonging to said C. H. Payton shall be and is hereby given to the said Martha Payton and in the event the said C. H. Payton shall survive then all of the property belonging to said Martha Payton shall be and is hereby given to the said C. H. Payton. It being a fact that all the property we own is community property and we have no children born unto our marriage. It is our desire that the survivor, whether the husband or wife shall keep said property, especially any real estate as nearly as possible in as good condition as circumstances will permit during the lifetime of such survivor. And it is our joint desire and request that at the death of such survivor our said estate shall be equally divided between the nearest of kin to the said C. H. Payton and the said Martha Payton.

It is further our desire that the survivor be and is hereby appointed executor of this will without bond & that the probate court take no further action than to probate this will. Signed in the presence of T. R. Bacon and R. W. Curtis this the 24th day of March 1918. C. H. Payton Martha Payton."

Martha Payton died August 15, 1944 with the foregoing will unchanged, and C. H. Payton, survivor, was duly appointed and qualified as executor in accordance with its terms; there being no administration upon the estate of Mrs. Payton, as none was necessary. No children were born to the marriage of Martha and C. H. Payton, the latter dying June 28, 1947, following which, Dickerson was appointed administrator with the will annexed. Louveria Yarbrough, appellee herein, was the only child of Martha Payton by a former marriage, and the nearest of kin to C. H. Payton were aforesaid nieces and nephews named in defendant's amended answer. Also, from the pleading these nieces and nephews were severally shown to be residents of New Jersey, Oregon, Illinois, Missouri, Kansas, and various sections of Texas, Louveria Yarbrough, only, residing in Van Zandt County.

The realty referred to in above will was described in inventory and appraisement of Administrator Dickerson as community property lying in Van Zandt County, viz: 14½ acres out of the Thomas Hayes Survey, valued at $2,000; and 32 acres out of the John Moore Survey (homestead of the couple during their lifetime), located in the town of Edgewood, valued at $2,000.

Some months before his death, C. H. Payton conveyed by general warranty deed his "one-half undivided interest" in the 14½ acres just mentioned to Louveria Yarbrough and husband, consideration recited as $200 "all cash in hand paid." The trial court had decreed that, regardless of the will (the community estate owing no debts), Mr. Payton could rightfully pass title to his interest in said acreage; also concluding that the will by its terms devised to appellee Louveria Yarbrough the one-half interest in the estate owned by her mother, the nieces and nephews of C. H.

978

Payton succeeding to his one-half interest, which findings appellants assign as error and form the basis of this appeal.

■ "A 'joint' will is best defined as a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or in severalty by them." " 'Mutual' wills have been defined as wills executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other." " 'Reciprocal' wills are those in which the testators name each other as beneficiaries under similar testamentary plans. They are sometimes called 'double' or 'counter' wills. Ordinarily the testators under 'reciprocal' wills are husband and wife, brother and sister, or other closely related persons. Such wills seem to have been employed in earlier times by persons collaterally related to assure the possession by the survivor of an estate sufficient to maintain the prestige of the family." Editor's Note, Annotations to Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 168; 169 A.L.R. pp. 12, 13.

All parties hereto freely concede that the will under construction is joint and reciprocal in nature and also mutual by express language and intent, i. e., made pursuant to an underlying agreement or understanding; with the trial courts' findings in accordance.

■ Of course the mere existence of a joint will does not in itself establish a relationship of contract; nor does a designation as such by the parties make it a joint or mutual will either in law or fact. However, the will may by its terms or in its recitals "conclusively prove or tend to prove that it is based on or executed in furtherance of agreement." Nye v. Bradford, supra. This will is in the plural, disposing of "our property," giving to the survivor all interest of the one first passing; speaking of the whole property owned as community, with reference made of no children born of the marriage. It was their joint desire that the survivor should keep *"said property,"* especially any real estate, in good condition during the

lifetime of such survivor, and "our joint desire and request" that on death of the survivor "our said estate shall be equally divided between the nearest of kin to the said C. H. Payton and the said Martha Payton." (Emphasis ours.) A will in the foregoing language would be hardly possible without previous understanding and agreement, a testamentary contract being evident from its very terms. Nye v. Bradford, supra; 43 A.L.R.Annotations, 1028.

The wife was first to pass away following their joint will, leaving it unchanged and outstanding; the survivor ratifying and confirming the instrument by probate thereof and continued acquiescence. Benefits accrued to the surviving husband by reason of the will, for if Mrs. Payton had died intestate, one-half of her community estate would have been inherited by appellee Louveria Yarbrough, daughter by a former marriage. Art. 2578, Vernon's Ann.Civ.St.

■ The 14½ acres (subject-matter of deed by C. H. Payton, survivor, to Louveria Yarbrough, January 28, 1947) was acquired by the couple long before execution of this will. It being determined that aforesaid instrument was a reciprocal and mutual joint will, the question arises as to authority of the survivor thereunder to dispose of his one-half interest in acreage to which provisions of the will had undoubtedly attached. For answer, the following applicable principle has met with consistent approval by Texas Courts, inclusive of current Supreme Court decisions: "The rule is well settled that, on the death of one of the parties to an agreement for mutual wills, leaving a will in accordance with the agreement, the survivor becomes estopped from making any other or different disposition of his property than that contemplated in such agreement, and his obligations under the agreement become absolutely irrevocable, and enforceable against him, at least where he avails himself of provisions of decedent's will in his favor, or accepts any benefits thereunder, * * *." 69 C.J., p. 1302, sec. 2725b. Nye v. Bradford, supra; Chadwick v. Bristow, Tex.Sup., 208 S.W.2d 888. In Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, 369, writ refused, the wills were separate and from their recitals alone

were held insufficient to establish a contract. In reversing to allow extrinsic proof, the Austin Court said: "If the wills in question were mutual and reciprocal and executed pursuant to agreement * * * when R. M. Wagnon probated his wife's will, and accepted the benefits thereof, such contract between them became irrevocable, and the rights of the children, not only in their mother's estate, but in all the community then existing, became fixed and indefeasible, subject, of course, to R. M. Wagnon's right 'to use, possess and control, as his own individual property,' said property during his lifetime. Moore v. Moore, Tex.Civ.App., 198 S.W. 659; Larrabee v. Porter, supra [Tex.Civ.App., 166 S.W. 395]; Sherman v. Goodson's Heirs, (Tex.Civ.App.), 219 S.W. [839], 841. That is to say, if said wills were mutual and reciprocal, R. M. Wagnon, upon the probate of his first wife's will, became vested with only a life estate in the entire community property, with remainder to their children. The wills gave him no authority to sell or dispose of same, but only to use, possess, and control it as a life tenant."

In Sherman v. Goodson's Heirs, 219 S.W. 839, 841, writ refused, it was held: "But for the purpose of sustaining the judgment here rendered we think it unnecessary that the court should have found that there was a pre-existing contract to execute the joint will. The fact that the will was executed in that form conclusively evidences an agreement by the participants to do what was actually done by them. The will became irrevocable after the death of one, not because it was made in pursuance of a previous contract, but because the survivor, after ratifying and accepting the benefits conferred, became estopped to repudiate the will."

■ It would thus appear that Mr. Payton's deed to Louveria Yarbrough conveyed no more than his life estate, the remainder fee having already vested in devisees referred to as next of kin.[1]

■ Appellant further complains of findings made by the trial court with rendition of judgment in accordance, viz: That "from the terms of said will and such evidence of the surroundings as were necessary to judge of the intention of the said Martha Payton and C. H. Payton at the time they executed said will, that their estate should be held intact by the survivor during the life of said survivor, and that upon the death of said survivor one-half of the said estate was to be and become the property of the' plaintiff, Louveria Yarbrough, as the child and only child and nearest of kin of said Martha Payton, deceased; and the other half of said estate was to be and become the property of the nearest of kin of the said C. H. Payton, to be shared by them in equal portions * * *." The following language of the will is thereby presented for construction—"and it is our joint desire and request that at the death of such survivor our said estate shall be equally divided between the nearest of kin to the said C. H. Payton and the said Martha Payton." It is contended that the words "equally divided" in the will, along with its language throughout, contemplate only one class of distributees,—the fifteen nieces and nephews and appellee daughter each taking a one-sixteenth undivided interest in all bequeathed property. The intention of these testators in this joint division must be ascertained from the text of their will "and from those words alone, but in order to discover the meaning attached by the testator to the words used and to apply them to the particular facts in

---

[1] Payton's deed of January 1947 only diminished the interest passing to his nearest of kin under the will, favoring Mrs. Payton's "next of kin" (her daughter) to such extent. It is the holding of many cases that the element of trust relates only to property received by the survivor under a mutual will, in this instance the wife's undivided one-half interest, the survivor not becoming a trustee of his own property. This he could dispose of in fee simple during survivorship without resulting injury or prejudice to next of kin or devisees of the testator who had pre-deceased him. See Wallace v. People, Tex.Civ.App., 89 S.W.2d 1030; Hutton v. Gonser, 159 Wash. 219, 292 P. 743; Rastetter v. Hoenninger, 214 N.Y. 66, 108 N.E. 210; 108. A.L.R., Annotations, 868. Under these authorities, Mr. Payton was fully enabled to convey his one-half interest in the described acreage, rights of next of kin of the survivor not vesting until his death.

the case, the law admits extrinsic evidence as to the situation in which the testator was placed, the state of his family, his property, and other circumstances relating to himself individually and to his affairs." Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374, 377. Appellee on the other hand asserts that under the law two groups of remaindermen were intended, the wife's one-half interest going to her next of kin; the one-half interest of C. H. Payton likewise passing to his nearest of kin, i.e., the named nieces and nephews.

■ Gifts to a "class" are discussed and defined in Hagood v. Hagood, Tex. Civ.App., 186 S.W. 220, writ refused; McMullen v. Block, Tex.Civ.App., 168 S.W.2d 667; and see Vol. 7 Words and Phrases, Perm.Ed., page 428. However, by plain language of the instant will, not one, but two classes or sets of heirs are intended. In one class are the next of kin of C. H. Payton—the other comprising like blood relations of his wife Martha; for, although their expressed intention was to hold the property intact to be enjoyed jointly during lifetime, at the death of both the interest of each was to devolve separately, i.e., to the next of kin of each. There is nothing in the entire will evidencing a use of the word "between" in any other than its proper sense; applying literally only to two objects. It is to be interpreted, therefore, as a division into two parts; the word "among" being correct etymology had the testators intended a per capita distribution to a single class. See Dictionaries, Webster's New International and Century. Vol. 5 Words and Phrases, Perm.Ed., pages 398, 399; Henry v. Henry, 378 Ill. 581, 39 N.E.2d 18.

■ But appellant argues that the property bequeathed is to be "equally divided," thereby indicating a per capita distribution. Certainly the different words of a will must be harmonized, if possible, giving effect to the intention of testators under their general scheme or plan. In doing so, however, we cannot overlook the relationship of the parties to the objects of their bounty; by nearest of kin, Mrs. Payton obviously having in mind her only daughter, the husband having reference to collateral kinsmen, named nieces and nephews. "Words importing an equal division do not necessarily indicate a division among individuals, as they apply just as readily and appropriately to classes;" 69 Cor.Jur., p. 289; and by merely using the word "between" in its correct and proper sense, the phrase "equally divided" yields readily to the construction of a division into two equal parts—one to the nearest of kin of C. H. Payton and one to the next of kin of his wife, Martha, as decreed by the trial court. In short, the expression "equally divided" is referable to the proportional share that each one of the two classes shall take, not operating to alter the plain meaning of the word "between." While we must admit to a lack of harmony in American decisions involving the above and similar language in wills, in 16 A.L.R. p. 145, it is said: "Where a bequest is to the 'relatives,' 'heirs,' or 'next of kin' of the testator and of the testator's husband or wife, the courts evidently prefer a construction which will make two classes of the beneficiaries rather than one." See also Vol. 5 Words and Phrases, Perm.Ed. page 398; Record v. Fields 155 Mo. 314, 55 S.W. 1021; Runyan v. Rivers 99 Ind. App., 680, 192 N.E. 327; In re Lenhart's Estate, 344 Pa. 358, 25 A.2d 725; Henry v. Henry (Ill.), supra.

■ Furthermore, the words next of kin or nearest of kin are more or less synonymous with "lawful heirs," as dealt with under the laws of descent and distribution. Vol. 28 Words and Phrases, Perm. Ed., page 638. When it can be fairly gathered from their joint will that these testators intended their property to go according to State laws of inheritance, the words "equally divided," in the same connection do not "manifest a purpose to modify such statutory distribution." 69 Cor.Jur., sec. 1304, p. 283; 16 A.L.R., Annotations, p. 15 et seq.[2]

---

[2] There is an apparent conflict in what we have held here (Two classes of beneficiaries, rather than one) and the conclusion reached by the Fort Worth Court of Civil Appeals in King v. Howell, 120 S.W.2d 298, which we shall not attempt to reconcile.

It being our conclusion that the Payton deed of January 1947, conveyed only his life interest in and to the land described, the judgment below is modified so as to include said 14½ acres in the distribution as determined and decreed in other recitals of the judgment under review. As just above modified, the judgment of the trial court is affirmed.